BELTINCK *v.* MT. PLEASANT STATE HOME AND
TRAINING SCHOOL.

WORKMEN'S COMPENSATION—BACK INJURY—EVIDENCE.
   Award of workmen's compensation appeal board to plaintiff, an
   assistant to the farm superintendent, of workmen's compensa-
   tion for injury to back sustained while throwing a 200-pound,
   12-foot log on a fire incident to certain cleanup work on the
   defendant's premises is affirmed (CL 1948, § 412.1 *et seq.,* as
   amended).

DETHMERS, C. J., and SHARPE and CARR, JJ., dissenting.

Appeal from Workmen's Compensation Appeal Board. Submitted May 3, 1956. (Docket No. 67, Calendar No. 46,700.) Decided September 4, 1956.

Ona Beltinck presented his claim for compensation because of injuries against Mt. Pleasant State Home and Training School, employer, and State Accident

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation § 255.

Fund, insurer. Award to plaintiff. Defendants appeal. Affirmed.

*James R. McNamara,* for plaintiff.

*Harry F. Briggs* (*Stanley Dodge,* of counsel), for defendants.

KELLY, J. Defendants and appellants present but one question in this appeal from a workmen's compensation award, namely: Was the injury sustained by plaintiff an accidental injury compensable under part 2 of the workmen's compensation act?[*]

Plaintiff, a man 68 years of age, was employed by defendant Mt. Pleasant State Home and Training School for over 20 years in a supervisory capacity. The first 18 years of said employment he was farm superintendent and the last 2 years he was an assistant to the farm superintendent.

The injury complained of occurred on December 31, 1953, when a log approximately 12 feet long and 10 inches in diameter, weighing approximately 200 pounds, rolled off of a burning fire, and plaintiff, who was present at the time, endeavored, with his superior, the farm superintendent, to throw the log back on an adjoining fire a few feet away.

The farm superintendent, who was with plaintiff at the time of the injury, testified that the log rolled 3 or 4 feet, and when asked: "You picked it up and laid it on the fire?" he answered, "Well, no, we didn't lay it on the fire because it was a hot fire—we threw it on the fire."

Plaintiff immediately complained to his superior of a sharp pain in his back. He was hospitalized for 15 days and was released with his back in a plaster cast. The testimony discloses that plaintiff will have

---

[*] CL 1948, § 412.1 *et seq.*, as amended (Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 17.151 *et seq.*).—REPORTER.

to continue wearing a steel back support; that he must avoid bending over to pick up anything, and that he can do no physical labor.

The facts of the case justify the following finding of the workmen's compensation appeal board:

"Plaintiff's usual duties for defendant did not require the lifting of logs such as described above. In addition to being required to perform unusual work he was also required to perform this work in an unusual manner. He could not walk up to the fire and lay the log down easily, instead he was required to throw the log on the fire because of the heat from the fire. The proofs submitted show that the log fell from the fire and plaintiff clearly was injured as the result of having to place this log back upon the fire."

Shortly after the workmen's compensation act was enacted (1912) this Court decided the case of *Adams* v. *Acme White Lead & Color Works* (July, 1914), 182 Mich 157 (LRA1916A, 283, 6 NCCA 482, Ann Cas 1916D, 689). In this case our Court for the first time defined the word "accident" and, also, for the first time used the word "fortuitous," a word which is not found in the legislative enactment, but has been repeatedly, since the *Adams Case,* used by this Court. In defining "accident" the Court (p 160) quoted from Black's Law Dictionary (3d ed) as follows:

" 'Accident. An unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty;' "

and, also, quoted (p 164) from *Hensey* v. *White,* [1900] 1 QB 481, 485 (69 LJQB 188, 81 LT 767): " 'I think the idea of something fortuitous and unexpected is involved in both words "peril" or "accident." ' " The Court (p 164) also used a quota-

tion from *Fenton* v. *J. Thorley & Co., Ltd.*, [1903] AC 443 (72 LJKB 787, 790, 89 LT 314), as follows: " 'The expression "accident" is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed.' "

To determine the popular and ordinary sense of the expression "accident" we turn to Webster's New International Dictionary (2d ed, Unabridged) where we find "accident" defined as: "Literally, a befalling. An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." And where we also find the word "fortuitous" defined as, "Happening by chance or accident; occurring unexpectedly, or without known cause; chance."

In *Twork* v. *Munising Paper Co.*, 275 Mich 174, 178, this Court commented upon the Corpus Juris definition (1 CJ, pp 390–392) of the word "accident" as follows:

" 'In its most commonly-accepted meaning, the word denotes an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected; chance, casualty, contingency, an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and unexpected by the person to whom it happens; * * * something unexpectedly taking place, not according to the usual course of things; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; something happening by chance; a mishap.' "

The Court then stated (pp 178, 179):

" 'This definition is in accord with the decisions of this Court which has not accepted a narrow defini-

tion of the word as applied to the workmen's compensation act (CL 1929, § 8407 *et seq.*).

" ' "The statute seems to contemplate that an accidental injury may result by mere mischance; that accidental injuries may be due to carelessness, not wilful, to fatigue, and to miscalculation of the effects of voluntary action." *Robbins* v. *Original Gas Engine Co.*, 191 Mich 122, 129.' *Watson* v. *Publix Riviera Theatre*, 255 Mich 115, 116."

In *Rainko* v. *Webster-Eisenlohr, Inc.*, 306 Mich 328, 332, this Court said:

"What constitutes an accidental injury within the meaning of the workmen's compensation statutes has been so definitely stated in former decisions as to obviate the necessity of repetition. See *Adams* v. *Acme White Lead & Color Works*, 182 Mich 157 (LRA1916A, 283, 6 NCCA 482, Ann Cas 1916D, 689); and *Twork* v. *Munising Paper Co.*, 275 Mich 174."

In *Nichols* v. *Central Crate & Box Co.*, 340 Mich 232, this Court stated that the test of the existence of an accident or fortuitous event was whether an unusual or excessive strain was imposed on plaintiff's physique or that he exerted himself in a manner unusual to or greater than is ordinarily the case in the general field of labor which plaintiff was employed to perform.

The record in this case proves that an event took place without plaintiff's foresight or expectation and, further, that the rolling of the large log off the fire and the strenuous effort made by plaintiff to help his superior throw the log back on the fire constituted an undesigned, sudden and unexpected event. The severe injury he suffered cannot be connected up with a mere change in the human system incident to the general processes of nature, or existing disease, or weakened physical condition: The event took place without plaintiff's foresight or ex-

pectation and the close relationship of the log suddenly rolling off the fire and the effort to throw it back onto the fire created an event which unexpectedly took place, and certainly was not according to the usual course of events for plaintiff, whose activities for 20 years had been confined to and directed toward supervisory duties.

Our Court has said that the definition of "accident" could not be accepted by it as "a narrow definition of the word as applied to the workmen's compensation act," and has further stated that where something unusual occurs in the course of employment causing an injury that could even be said to be brought about through a "miscalculation of the effects of voluntary action," that such injury is compensable under the workmen's compensation act.

The record sustains the finding of the appeal board that "the falling of the log from the fire was an unforeseen or fortuitous happening and plaintiff's back injury was the end result of this happening. Plaintiff's personal injury clearly arose out of and in the course of his employment and we hold it to be compensable."

Affirmed. Costs to plaintiff.

Boyles, J., concurred with Kelly, J.

Black, J. *(concurring in result).* I agree in part and disagree in part with the opinion Mr. Justice Kelly has prepared in this case of Beltinck. Reasons for such partial disagreement appear over my signature in *Brazauskis* v. *Muskegon County Board of Road Commissioners,* 345 Mich 480, 495. They trace back to and may be found in Mr. Justice Smith's dissent in *Wieda* v. *American Box Board Co.,* 343 Mich 182, 191.

I concur with Mr. Justice KELLY in affirmance of the award below.

SMITH, J., concurred with BLACK, J.

CARR, J. *(dissenting)*. Plaintiff herein was employed by the defendant Mt. Pleasant State Home and Training School for a number of years prior to December 31, 1953. On said date he was engaged, with another employee, in burning brush, such work being undertaken as a part of his duties. While so engaged he injured his back, as a result of which he sustained a disability. His application for compensation under the workmen's compensation law* was duly heard before a deputy of the workmen's compensation commission and an award was made in his favor. The workmen's compensation appeal board,† under date of September 16, 1955, affirmed the award, and on leave granted defendants have appealed.

Under the provisions of the statute here involved plaintiff was not entitled to an award, which was based on part 2 of the act, unless his injury was received as the result of an accidental occurrence. The appeal board determined this issue in favor of the plaintiff and the sole question presented in the case is whether there was testimony taken on the hearing before the deputy commissioner supporting the finding. Plaintiff's claims as to the occurrence in question, and the manner in which his injury was sustained, are set forth in the following excerpts from his testimony:

"*Q.* Will you tell the court what happened on December 31, 1953?

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.*, as amended [Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 17.141 *et seq.*]).

† See PA 1955, No 62, § 9 (effective May 20, 1955) (Stat Ann 1955 Cum Supp § 17.6[15]).

"*A.* Well, me and Mr. Tyler went down to the flats to burn some stuff and a log got away from the fire and we picked it up and shoved it over on the other pile and that's where we got to go—

"*Q.* (Interposing): Could you tell the court just about the approximate size of that log?

"*A.* I think it was about 12 feet long and approximately 10 inches—I imagine it would weigh around 200 pounds.

"*Q.* You lifted that log together with Mr. Tyler?

"*A.* Yes.

"*Q.* You were burning rubbish?

"*A.* One on each end. \* \* \*

"*A.* We picked the log up and we carried it a little ways and threw it over on the pile.

"*Q.* By this throwing it, you mean, sort of pushing it toward the pile?

"*A.* Yes, probably it wasn't too far—I don't think over 2 or 3 feet—maybe a little more. \* \* \*

. "*The Commissioner:* You say yourself and another man picked up a log and what happened?

"*A.* We carried it over to the other pile that was burning and throwed it over there.

"*Q.* What did this log weigh, did you estimate approximately 200 pounds?

"*A.* Yes.

"*Q.* And how long have you been working at the Mt. Pleasant Home and Training School?

"*A.* Well, worked 20 years and 1 month there.

"*Q.* And was the type of work you did there similar to the work you were doing on December 31, 1953, similar to the work that you had been doing for the past 20 years?

"*A.* Well, it was mostly supervising work. If we had any of the boys along with us that day, we probably wouldn't have lifted it but there wasn't any with us.

"*Q.* How many times in the course of your employment at the Mt. Pleasant Home and Training School was it necessary for you to lift logs weighing approximately 200 pounds?

"*A*. Well, I don't believe I ever lifted one there.

"*Q*. And what happened when you lifted this log and threw it on the fire?

"*A*. Well, I got a bad trouble in my back.

"*Q*. A sharp pain?

"*A*. Sharp, yes.

"*Q*. About what time was this, would you estimate?

"*A*. It was around 11 o'clock—sometime in the day.

"*Q*. Did you continue working?

"*A*. Yes, I continued that day and worked until the 2d of January at noon when the back got so bad that I had to go home. I worked from that time up until that."

Plaintiff further testified that he was 68 years of age and that he had previously had some trouble with his back, incapacitating him for a few days. The physician who treated him on such prior occasion testified that the condition then existing affected both sides of plaintiff's back, and fixed the time as 3 or 4 years prior to the hearing in the instant proceeding. The witness also treated plaintiff following the occurrence of December 31, 1953, and testified that plaintiff had an arthritic condition of the spine but declined to express an opinion whether such condition existed prior to the time of the injury here involved.

It will be noted from plaintiff's testimony on the hearing before the deputy commissioner that there was no claim on his part that he slipped or stumbled while assisting in placing the log on the fire, or that he experienced any difficulty in carrying his end of the log. He did not state whether the strain or other injury that he suffered occurred when the log was picked up from the ground or at the time it was pushed or thrown on the burning brush. Neither does it appear that he was subjected to any unexpected stress or strain as the result of an act on

the part of his fellow workman, or for any other reason, or that the log was heavier than anticipated. It is apparent that placing the log on the fire was an incident of the work in which the men were engaged, and was so considered by plaintiff at the time.

There is nothing in this record to indicate that there was anything unusual in the log rolling from the brush pile on which it had first been placed, or in the act of placing it on another pile. There is nothing to suggest that anything occurred, with reference to this log, other than in the ordinary and normal course of brush burning. There is, in other words, under the testimony of the plaintiff nothing tending to show that his injury was the result of an accident in the ordinary acceptance of that term. Some emphasis is placed on the weight of the log which plaintiff estimated to be possibly 200 pounds, his witness, who was working with him at the time of the occurrence, expressing the opinion that such weight was between 150 and 200 pounds. There is, however, no showing in the case that the handling of timbers of such weight in the clearing of land and the burning of brush is unusual. It does not appear that either plaintiff or his fellow workman regarded their handling of the log as other than a proper incident to the work that they were doing.

In affirming the award the appeal board indicated the basis of its action in the following statement from the opinion filed:

"The proofs submitted show that the log fell from the fire and plaintiff clearly was injured as the result of having to place this log back upon the fire. The falling of the log from the fire was an unforeseen or fortuitous happening and plaintiff's back injury was the end result of this happening."

There is nothing in the record to support a conclusion that the rolling of a log from the top of a

brush pile on which it has been placed for burning may properly be regarded as an accident. Moreover, the log did not strike and injure plaintiff. Its falling or rolling from the brush heap was not the cause of the injury to his back. It was the finding of the board that the injury suffered in picking up and placing the log on the other pile of burning brush was, as stated, the "end result." This suggests that the action of the appeal board rested on the theory that because there was an unexpected and unanticipated result of the occurrence in question it should be regarded as accidental in nature, and, hence, as furnishing the basis for an award under part 2 of the compensation act. With such conclusion we cannot agree. In *Wieda* v. *American Box Board Company,* 343 Mich 182, it was held that:

"An accidental injury, to be compensable under the workmen's compensation act, must be more than merely an unusual and unanticipated result; the means must be accidental—involuntary and unintended, and there must be some proximate connection between accidental means and the injurious result (CL 1948, § 412.1 *et seq.,* as amended).

"An unfortunate result may not be given the retroactive effect of making a particular event or happening accidental in nature which was not of such character when it took place and, thereby, impose liability under portion of workmen's compensation act requiring that injury to be compensable must have been proximately caused by an accident (CL 1948, § 412.1 *et seq.,* as amended)." (Syllabi 2 and 3.)

It should be noted in this connection that the decision of the appeal board which is here before us on appeal was rendered prior to determination of the *Wieda Case.*

In *Hooks* v. *City of Wyandotte,* 278 Mich 232, decided by this Court prior to the amendment of the

compensation act by adding part 7 thereto, it was held that the plaintiff employee who sustained an injury while lifting a drum of ashes was not entitled to compensation on the ground that such injury was the result of an accident. Testimony offered and received on the hearing in the proceeding disclosed that the drum that the plaintiff was seeking to lift when he suffered his injury was frozen, inferentially to the ground. In reaching its conclusion the Court stated that the testimony "does not indicate that the injury occurred otherwise than when the work was being done in the usual and ordinary way and without the intervention of any untoward or accidental happening. That no accident, within the meaning of the compensation law, was shown is settled by repeated decisions." In support of the holding the opinion cited a number of prior cases analogous on their facts.

Later decisions are in accord with the holding in the *City of Wyandotte Case.* In *Hagopian* v. *City of Highland Park,* 313 Mich 608, it was held that the plaintiff, who suffered a heart attack while engaged in lifting heavy containers as a part of his work, had not sustained an accidental injury and, hence, was not entitled to compensation under part 2 of the act. *Arnold* v. *Ogle Construction Company,* 333 Mich 652, involved a factual situation similar to that in the case at bar. There the plaintiff while engaged with another employee in lifting a heavy box strained the muscles of his chest and back. The injury was disabling. The workmen's compensation commission made an award in plaintiff's favor without a finding that the injury was accidental, it apparently being the position of the commission at the time that compensation was permissible under part 2 of the act even though the injury was nonaccidental. This Court rejected the theory on which the award was based and remanded with directions

to set it aside. The record discloses that the plaintiff Arnold sustained his injury because he engaged in labor too strenuous for his physical condition. In the ultimate analysis plaintiff's claim for compensation in the instant proceeding rests on a like basis.

In *Nichols* v. *Central Crate & Box Company,* 340 Mich 232, plaintiff sustained an injury resulting in partial paralysis while undertaking to raise a log with a cant hook. He was at the time 73 years of age and was suffering from a pre-existing ailment. The workmen's compensation commission made an award in his favor on the ground that he had sustained an accidental injury. This Court by unanimous decision reversed on the ground that under the record there was no showing that the occurrence in which the injury was suffered was accidental. It is apparent that there, as in the case at bar, an employee in the course of his work undertook to do an act of such nature as to be inconsistent with his physical condition.

Citations of other cases would serve no useful purpose. Under the record before us it may not properly be said that plaintiff sustained an accidental injury. Rather, his disability resulted from the performance of his work in an ordinary normal way. The unfortunate result was doubtless unanticipated, but such fact did not render the occurrence accidental in character. *Wieda* v. *American Box Board Company, supra,* and prior decisions there cited.

The award should be reversed and the case remanded to the workmen's compensation appeal board with directions to set aside the award made and to enter an order denying compensation.

Dethmers, C. J., and Sharpe, J., concurred with Carr, J.

Edwards, J., took no part in the decision of this case.