SHEPPARD *v.* MICHIGAN NATIONAL BANK.

WORKMEN'S COMPENSATION—OFFICE-MACHINE OPERATOR—BACK IN-
JURY—ACCIDENT.
   Office-machine operator who suffered a back injury as she took
   a 25-pound tray of cards from file on her second attempt at
   removal was properly awarded workmen's compensation there-
   for; per SMITH, KELLY, and BLACK, JJ., on ground that term
   "accident" as used in the workmen's compensation act included
   both the unexpected cause and the unexpected results of a
   single event; per DETHMERS, C. J., and EDWARDS and KELLY,
   JJ., that a single-event personal injury arising out of and
   in the course of employment need not have been occasioned
   by an accident or fortuitous event (CL 1948, § 412.1 *et seq.*).

SHARPE and CARR, JJ., dissenting.

Appeal from Workmen's Compensation Appeal
Board. Submitted June 13, 1956. (Docket No. 68,
Calendar No. 46,732.) Decided June 10, 1957.

Eula Sheppard presented her claim for compen-
sation from Michigan National Bank and the State
Accident Fund for injury to her back. Award to
plaintiff. Defendants appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Workmen's Compensation § 196.

(577)

*Marcus, Kelman, Loria, McCroskey & Finucan (Thomas W. Finucan,* of counsel), for plaintiff.

*Harry F. Briggs (Peter Munroe,* of counsel), for defendants.

BLACK, J. Eula Sheppard was awarded compensation on strength of facts appellants have stated with commendable brevity in their brief. I quote:

"In her work as an I. B. M. operator the plaintiff, Eula Sheppard, lifted and handled 6 or 8 trays of I. B. M. cards each day. Each tray of cards weighed approximately 25 pounds. On December 14, 1953, the plaintiff leaned over to pick up a tray of cards from a tub file. The tray stuck, and then the plaintiff yanked on it, and when she yanked, the 'pains flew all over' her back. Plaintiff's counsel asked the following question:

" 'When you pulled on the tray did it give or did it not, or did it stay stuck?'

and the plaintiff answered:

" 'The first time it stuck and stayed there and then I gave it a yank and I brought it up but I turned it loose when the pains went through my back.' "

Counsel say the proof does not establish that the plaintiff suffered a compensable injury, and ask us to reverse the award by force of *Nichols* v. *Central Crate & Box Co.,* 340 Mich 232;* *Arnold* v. *Ogle Con-*

---

* This is the case (*Nichols*) that prompted the scholarly Dean Pound to criticism of our "eminence." He said (15 NACCA Law Journal 54):

"Michigan has attained a bad eminence in narrow interpretation and application of the workmen's compensation act. Larson reminds us that before any American State adopted the phrase 'injury by accident' from the British act, the English courts had settled that although the cause was routine and accidental, it was enough if the effect on the employee was unexpected and catastrophic and so accidental. As it is well settled when a statute which has been authoritatively construed is adopted by legislators elsewhere, the construction is deemed adopted with the text, this should have been enough, and such is the holding in a majority of jurisdictions. 1 Larson, Workmen's Compensation Law, §§ 38.00, 38.10, 38.20." (For

*struction Co.*, 333 Mich 652; and *Simpson* v. *Matthes*, 343 Mich 125.

Thus we have before us another "strain case" arising under the workmen's compensation act. Ere end of the year this case, along with others to come, may lift us from the abominable morass into which the decade since *Hagopian* v. *City of Highland Park*, 313 Mich 608, has thrust this Court and our imprecation-muttering legal profession. The compensation act* was proclaimed upon enactment as a welfare-promoting means toward certain and inexpensive determination of right to "compensation of workmen for industrial injuries upon the basis of trade risks relating to the industry, to be charged against it as part of the cost" (quotation from *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich 8, 14), yet our Kilkenny decisions in strain cases have fought each other from Sam Hagopian's injury through Donald Brazauskis' death to the point where there is nothing left so far as certainty is concerned excepting the well-chewed tails thereof.

*Brazauskis* (*Brazauskis* v. *Muskegon County Board of Road Commissioners*, 345 Mich 480), the 4 to 4 deadlock of April 2d last, and now the misshapen 3-2-2 monster known as *Beltinck's Case* (*Beltinck* v. *Mt. Pleasant State Home and Training School*, 346 Mich 494), unitedly prove the parable. Indeed, they liken us to the Etruscan array, faltering at Tiber's bridge. Here we stand, wavering from term to term, fearful of unvarnished avowal, pictured as by Macaulay's pen:

> "But those behind cried 'Forward!'
> And those before cried 'Back!' "†

---

discussion and reference to quotation, see *Mack* v. *Reo Motors, Inc.*, 345 Mich 268, at page 281.)

\* CL 1948, § 411.1 *et seq.*, as amended (Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 17.141 *et seq.*).—Reporter.

† Macaulay, Lays of Ancient Rome, Horatius, stanza 50.—Reporter.

Happily, the end of all this legal teratology is near, as forecast in *Wieda's* dissent last year (*Wieda v. American Box Board Co.,* 343 Mich 182, 191). Two of my Brothers, having refused to sign Mr. Justice Smith's exhaustive dissent in *Wieda,* now accept in *Beltinck* the tried and sound linchpins of such dissent. I refer to Mr. Justice Kelly's belated though presently praiseworthy reliance on *Fenton* v. *J. Thorley & Co., Limited,* [1903] AC 443 (72 LJKB 787, 89 LT 314); and *Twork's* (*Twork* v. *Munising Paper Co.,* 275 Mich 174) quotation from *Watson* v. *Publix Riviera Theatre,* 255 Mich 115. Four members of the present Court are thus on record in support of the proposition that the word "accident," as employed in the workmen's compensation act, means "an unexpected result attending the operation or performance of a usual or necessary act or event." Why, in these circumstances, should we continue to wander aimlessly from case to case as the legal world gazes curiously on our strange paralysis? There is a way. It was glimpsed—so far as clear majority vote of this Court is concerned—and then lost in *Beltinck.* Even so, we are well on the way to judicial catharsis.

As this is written, with a mighty riverway of the Great Lakes flowing past my window, I am prompted again to place a date in our reports*—a date of motion to accomplish now that which is just as sure as the flow of eternity's river. I move then, this 5th day of September in the year 1956, that cases of industrial strain be governed henceforth by Justice Smith's unerring postulate in *Wieda,* that the word "accident" includes both the unexpected cause and the unexpected result, and that we advise the profession of steadfast intention to follow *Fenton's* guide,

---

* See *Mack* v. *Reo Motors, Inc.,* 345 Mich 268, 278.

quoted as follows from *Wieda,* in pending and future cases (p 196):

"If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle or rick his back, or rupture himself, the mishap in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight, or trying to move something too heavy for him."

Whether we adopt *Fenton's* rule forthrightly at this time, or whether we do it later with or without aid of the 1937 and 1943 amendments of the workmen's compensation act,* makes but little difference save only to the countless victims of continued purblindness. Justice Smith's lone and majority-ignored spadework in *Wieda* has inexorably and righteously headed this Court toward the light of *Fenton,* of Larson, of Pound, and now the Florida supreme court (*Gray* v. *Employers Mutual Liability Ins. Co.* [Fla], 64 So2d 650).

Eula Sheppard, having suffered an accidentally disabling and hence compensable rick of the back, is entitled to affirmance of the award below, with costs.

ADDENDUM (June 10, 1957).

This case was duly assigned to the writer, preceding submission during our June term last year. In pursuance of such assignment the foregoing dated opinion was prepared and distributed for consideration of my Brothers more than 9 months ago. Since then Justices Carr, Edwards, Dethmers, Smith, and Kelly have written in the case and our personnel has partially changed. Five present members of the Court declare now their devotion to that

---

* See *Wieda's* dissent, p 201 of report, and dissent in *Arnold* v. *Ogle Construction Co.,* 333 Mich 652, 666.

which Mr. Justice SMITH originally urged upon the Court in *Wieda*. This is progress. That the profession be enabled to count and identify us with convenience, I am today signing Mr. Justice SMITH's opinion in this case of Eula Sheppard.

SMITH, J. (*concurring*). We continue to pursue our melancholy way in these compensation cases, the Court dividing and re-dividing with monotonous regularity as the egregious errors of the past continue to war with the humanitarian objectives of the act we must construe. Our "eminence" in these cases, as Dean Pound so cogently observed (see Mr. Justice BLACK in *Mack* v. *Reo Motors, Inc.,* 345 Mich 268, 281), is bad indeed. It will remain bad, and our people will continue to know a sorrow and distress peculiar to them alone, until our Court forsakes its "stubborn" (I borrow the word from the Chief Justice) refusal to correct its judge-made errors. Our Court, commendably quick to correct the errors of others, must be equally quick to correct its own. Since my dissent in *Wieda* v. *American Box Board Company,* 343 Mich 182, 191, pointing out Florida's reversal of its former erroneous construction of the word "accident," Arkansas has likewise acted. In the case of *Bryant Stave & Heading Company* v. *White,* 227 Ark 147 (296 SW2d 436), after commenting upon the controversy and litigation over the meaning of the word "accident," the court said: "We agree that litigants, lawyers and members of the commission are entitled to a definite and unequivocal settlement of the legal question here posed. In undertaking to do so, we see no valid reason for not aligning Arkansas with the decided weight of authority on the subject." The court then concludes:

"Notwithstanding anything we may have said in prior cases, we hold that an accidental injury arises

out of the employment when the required exertion producing the injury is too great for the person undertaking the work, whatever the degree of exertion or the condition of his health, provided the exertion is either the sole or a contributory cause of the injury. In short, that an injury is accidental when either the cause or result is unexpected or accidental, although the work being done is usual or ordinary. The judgment of the circuit court affirming the award is accordingly affirmed."

Thus in one State after another a rule of reason consonant with the purpose of the act replaces arbitrary judicial fiat. Neither Arkansas, it will be noted, nor Florida acted under the whip of legislative compulsion. Each was secure in the knowledge that a court has inherent power to purge itself of its own errors. Failing in this duty, the day inevitably approaches when a court will stand alone, while the stream of life flows by, avoiding, but not being impeded by, the curious derelict in its path.

Our problems are multiplied, not simplified, by the current outpourings of opinion. It is now sought to perpetuate, with respect to our rulings concerning this simple term, accident, the spurious distinction between the ill and the healthy, between the weak and the strong, between those suffering to some degree from the ordinary diseases of life (who doesn't?) and those with no ailments or defects antedating the accident. This is clear from *Croff* v. *Lakey Foundry & Machine Co.*, 320 Mich 581, 585, heavily relied upon this date. It is pointed out in *Croff* "it can hardly be said that the 1943 amendment broadens the act to allow an award in a case of aggravation of a pre-existing disease without an accident or fortuitous event." But, it is concluded, the disabilities of one without pre-existing disease or condition ("as distinguished from disabilities resulting from the aggravation of pre-existing disease or

condition") are compensable without proof of accident or fortuitous event.

Thus mankind is placed in 2 categories as respects recovery for accidental injuries: those with a pre-existing "disease or condition" and those not so handicapped. This classification we completely reject. Nothing is better settled in compensation law than that the act takes the workmen as they arrive at the plant gate. Some are weak and some are strong. Some, particularly as age advances, have a pre-existing "disease or condition" and some have not. No matter. All must work. They share equally the hazards of the press and their families the stringencies of want, and they all, in our opinion, share equally in the protection of the act in event of accident, regardless of their prior condition of health. See 18 NACCA Law Journal 90–92, an cases there cited.

How could a differentiation so monstrous, so destructive of the purposes of the act, ever have gained even a foothold in our law? Its history betrays its illegitimacy. Prior to the 1943 amendments, nothing was better settled in our Michigan law than that an employer took an employee as he found him. (He takes him "as is," it is sometimes phrased.) It was recognized that just as every man brings with him to the job some strength, he brings some weaknesses. None is perfect. In the early case of *LaVeck* v. *Parke, Davis & Co.,* 190 Mich 604 (LRA 1916D, 1277), we considered the case of a claimant with a pre-existing arteriosclerosis who had suffered the rupture of a cerebral blood vessel under conditions of unusual exertion. In affirming his award we cited with approval the English decision of *Hughes*

v. *Clover Clayton & Co.*, 2 BWCC 15, 17,* quoting, in part, as follows (p 607):

" 'Every man brings some disability with him. Any exertion or any external action which might have been innocuous to a man in good health may produce most serious results to the workman bringing with him, as I have said, some disability. This man brought with him a disability of a serious nature—an aneurism—which I quite agree might have caused his death at some time or other without any exertion, usual or unusual. But in this case we have this fact found that a strain incurred by the workman in the ordinary discharge of his duties caused the rupture from which he died. As I read the decisions in the House of Lords, it is not open to this Court to say that this is not an accident.' "

Likewise, in *St. Clair* v. *A. H. Meyer Music House,* 211 Mich 285, we were equally explicit in granting compensation:

"The fact that applicant was predisposed because of disease to this form of attack is immaterial and has nothing to do with the question whether what befell him is to be regarded as an accident or not. See *LaVeck* v. *Parke, Davis & Co.,* 190 Mich 604, at page 607."

See, also, *Hurley* v. *Selden-Breck Construction Co.,* 193 Mich 197; *Monk* v. *Charcoal Iron Company of America,* 246 Mich 193.

Thus we clearly established at an early date that disability caused by an aggravation of a pre-existing condition by a compensable event was compensable. We were not concerned with the nature of the pre-existing condition. Our attention, rather, went to the nature of the event causing the final disability. We did not attempt to separate those in perfect

---

* This case, frequently referred to as the *Spanner Case,* was affirmed sub nom., *Clover, Clayton & Co.* v. *Hughes,* [1910] AC 242 (79 LJKB 470, 102 LT 340).—REPORTER.

health from those not so blessed. Michael LaVeck's pre-existing arteriosclerosis did not bar him from compensability when his final disability was brought about by the conditions under which he worked.

Did the 1943 amendments change this? To our minds it is clear that they did not. What was sought to be changed by the amendments was our erroneous interpretation of the word "accident." (This interpretation had been taken from a short-lived decision of an intermediate English appellate court, which had been overruled in England 10 years prior to its embrace by us. See *Wieda* dissent, *supra*.) Changed it was. The terminology in part 2 of the act now spoke in terms of a "single event," a term comprehending both cause and effect. The word "accident" was eliminated in many places, but even where retained, as in the title, it could no longer be interpreted, as we had formerly done, to exclude the mishap in one's ordinary work. That is to say, no longer would it be possible to describe a disaster as not an accident simply because one was doing his ordinary work in his ordinary way. If the result was unanticipated and unexpected the result was as "accidental" in legal effect as in ordinary speech. My conclusions in this regard are found in my dissent in *Wieda, supra* (p 204):

"Our Court (had) interpreted the word 'accident' to embody only the cause aspect, excluding the unexpected result of ordinary work. The word 'event,' however, is properly subject to no such ellipsis. It is clearly and indisputably a word referring to both cause and result. It is a word synonymous with occurrence and includes all of the steps or incidents from first cause to final effect. Should authority be demanded, beyond the authority of common speech, Webster's New International Dictionary (2d ed) will illumine the point. The result, then, is that the word 'accident,' even where applicable in the act and its

title, has now been restored to its original meaning. It refers to both cause and effect. It includes not only the unexpected incident or condition but also the unexpected result of ordinary work. Thus we have come full circle and have reached by remedial legislation the same result as the English courts by interpretation."

These conclusions, it will be observed, are fully consistent with the underlying purpose of the act, to require industry to bear the burden of the injuries, rather than have them fall with crushing force on the the workman himself. If lifting a garbage can (*Hagopian* v. *City of Highland Park,* 313 Mich 608, compensation denied) or a gun barrel (*Anderson* v. *General Motors Corporation,* 313 Mich 630, compensation granted) actually disables the workman, his inability to work is an industrial casualty for which compensation is payable under our act (particularly as amended). He is equally disabled, of course, if the garbage can accidentally rolls off the truck and hurts him, but in either event we note that the result is the same (disability) and the cause actually arises out of the work. It will be observed that in neither of these instances have we even mentioned the pre-existing health of the injured workman. Given the injury in fact and the causal connection (neither of which is questioned in Eula Sheppard's case) the state of the workman's pre-existing health is immaterial.

This discussion of the effect of the 1943 amendments should not omit some mention of the relationship between the occupational injury and the accidental injury since they must be viewed together in the construction of the act. As we have seen, the 1943 amendments completely wiped out the requirement of "accidental" injury *as our Court had theretofore erroneously construed it.* The title of the act, however, still refers to "compensation for  *  *  *

accidental injury." This titular description, read with section 1 of part 2, justifies the conclusion, expressed in the *Wieda* dissent, *supra,* that the legislature "has now authorized compensation for personal injury due to disease, for personal injury not attributable to a single event, and for personal injuries attributable to a single event." The latter is the accident referred to in the title. It includes the fortuitous cause. It likewise includes the fortuitous result, the mishap arising in one's ordinary work. Disability, then, to be compensable, need not arise from an occupational disease, nor need it arise solely from an occupational injury. If it be accidentally suffered in the work performed it is likewise compensable. Without this latter recovery provision, the act would be administratively chaotic and an open invitation to litigation. What of the plant guard, supervising target practice on the indoor range? What of the air-hammer operator? In each case injury is suffered, in one of the ear, in the other of the arm. Is it occupational injury, peculiar to the business? It might well be so analyzed. Or, since there is always a last single shot, a last blast of the hammer, which precedes the final collapse, has not the workman actually received a personal injury "attributable to a single event" (namely, the last blow)? Such analysis would seem equally valid. But why undertake such minute (if not impossible) dissection? The act wisely relieves us of such necessity. The injury is compensable under either anaylsis. So it is that we interpret the 1943 amendments, an interpretation, we might add, in full harmony with the aspirations and hopes embodied in the nationwide compensation legislation. As Horovitz so well puts it in his treatise on Workmen's Compensation (p 8) :

"(The workmen's compensation law) was a revolt from the old common law and the creation of a complete substitute therefor, and not a mere im-

provement thereon. It meant to make liability dependent on a relationship to the job, in a liberal, humane fashion, with litigation reduced to a minimum."

It is high time that we of the Court lifted our eyes from the intricacies of spelling and punctuation and looked to the beneficent purposes of the legislation. It is not our function to deny by a grudging construction of the law what our people have seen fit to grant.

In this connection we reject, without qualification, the asserted "general rule of interpretation" quoted to us this date, to the effect that "the workmen's compensation law, being in derogation of the common law, must be strictly construed." The substitution, for thought, of this legal cliché has rarely had more lamentable result than in this area, depriving for years, as it has, the casualties of industry of the benefits awarded by a compassionate people. No one denies that statutes in derogation of the common law are to be strictly construed. But the maxim is not a corpus juris. Nor does it, like one of the Ten Commandments, contain within its limited borders either an unalterable moral principle or an inflexible command. It has, in truth, a companion, from which it cannot be separated, save by the feckless or the reckless: that statutes must be interpreted to accomplish their legislative purpose. The proper statement, then, runs something like this: "The rule that statutes in derogation of the common law are to be strictly construed does not require such an adherence to the letter as would defeat an obvious legislative purpose or lessen the scope plainly intended to be given to the measure." *Jamison* v. *Encarnacion,* 281 US 635, 640 (50 S Ct 440, 74 L ed 1082).

Finally, it will not be overlooked that the 1943 act also amended the occupational disease sections of part 7. In short, the total effect of the amendments was to broaden the application of the act, not

to narrow it. So we held in *Hargrove* v. *Ford Motor Co.*, 313 Mich 199.

In view of the above, what possible basis can there be, with reference to a compensable event, either for setting up 2 categories of claimants (those having pre-existing defects and those without) or seeking to perpetuate such categorization? That such is intended in the Sheppard Case seems beyond question. We have noted, heretofore, the distinction urged in the *Croff Case* between the disabilities of one without pre-existing disease or condition "as distinguished from disabilities resulting from the aggravation of pre-existing disease or condition." The same destructive differentiation is found in many of the cases relied upon by my Brethren: *Anderson* v. *General Motors Corp.*, 313 Mich 630, 638 ("Hagopian's affliction was a disease of the heart with which he was afflicted both prior to and subsequent to the alleged personal injury."); *Kasarewski* v. *Hupp Motor Car Corp.*, 315 Mich 225, 229 ("Plaintiff's theory is that he sustained a personal injury by reason of aggravation of a pre-existing hernia, which aggravation impaired his earning capacity."); *Croff* v. *Lakey Foundry & Machine Co.*, 320 Mich 581, 583 ("Accordingly, defendant urges that plaintiff's disability results from a pre-existing diseased condition aggravated by a non-fortuitous happening and that it is, therefore, under the holding of this Court in *Hagopian* v. *City of Highland Park,* 313 Mich 608, noncompensable."); *O'Neil* v. *W. R. Spencer Grocer Co.*, 316 Mich 320, 323, quoting from *Hagopian* v. *City of Highland Park,* 313 Mich 608, 621 ("The amended act itself was not intended to cover aggravation of a pre-existing disease without an accident or fortuitous event"). The recent case of *Nichols* v. *Central Crate & Box Company,* 340 Mich 232, 234, 235, is equally explicit:

"In all of these cases it was held that to be compensable there must be an accident or fortuitous event which aggravates the pre-existing physical condition to cause a disability. Typical is the statement in *Arnold** (p 664) that 'the aggravation of a previously existing nonoccupational disease is not compensable under part 2 of the workmen's compensation law unless the aggravating injury is accidental in character.' Plaintiff relies on *Robbins* v. *Original Gas Engine Co.*, 191 Mich 122. This Court there said (p 128):

" 'It is not sufficient that there be an unusual and unanticipated result; the means must be accidental— involuntary and unintended. There must, too, be some proximate connection between accidental means and the injurious result.'

"Was plaintiff's pre-existing condition aggravated by an accident or fortuitous event arising out of and in the course of his employment by defendant?"

We will forbear additional citation. The cases abound in such statements.

(We note at this point a possible additional source of confusion creeping into our cases, now so replete with contradictions and inconsistencies that extreme care must be taken to avoid adding thereto. The unqualified phrase "disabilities resulting from personal injuries" is apt to be used as a phrase of art, to have reference only to the situation where one *in good health* is disabled. Thus used, it refers, were the thought to be fully stated, to "disabilities *incurred by one without pre-existing disease or condition* resulting from personal injuries." It is to be distinguished from the contrary situation, involving disabilities "resulting from the *aggravation of pre-existing disease* or condition.")

The erroneous differentiation between the claimant in good health and the one with a pre-existing

---

* *Arnold* v. *Ogle Construction Co.*, 333 Mich 652.—REPORTER.

disease or condition goes back to a confused and confusing pair of cases decided the same day in 1946, *Hagopian* v. *City of Highland Park, supra;* and *Anderson* v. *General Motors Corporation, supra.* Each case involved a strain due to lifting. Hagopian was denied compensation. Anderson received it. In *Hagopian* 2 opinions were filed and in *Anderson* 3.

We will not analyze in detail each of these 5 opinions. They have received ample attention elsewhere. It was Mr. Justice NORTH's concurring opinion in the *Anderson Case,* however, which most clearly sets forth the alleged distinction between that case and *Hagopian.* In view of the reliance thereon in the leading case of *Croff* v. *Lakey Foundry & Machine Co., supra,* and other cases cited and relied upon this date, some limited additional comment may be justified.

The point first made by Justice NORTH is an attempted differentiation of the injuries received by each. It is stated that Anderson's personal injury (he lifted gun barrels as a part of his work) arose out of and in the course of his employment. Hagopian also lifted, as a part of his work, garbage cans, but as to him, we are told (p 638), his "affliction was a disease of the heart with which he was afflicted both prior to and subsequent to the alleged personal injury. His disease did not arise out of his employment." This misses the point. It was his injury which arose out of his employment. It came directly from the lifting (as did Anderson's) and an ordinary disease of life was what was aggravated thereby. The case parallels *LaVeck, supra.* What LaVeck had was a pre-existing arteriosclerosis. It was as true with him as with Hagopian that his "affliction was (arteriosclerosis) with which he was afflicted both prior to and subsequent to the alleged personal injury. His disease did not arise out of his employment." But his injury did, just as did Hagopian's,

and we affirmed LaVeck's award of compensation by a unanimous Court.

The learned Justice continues (*Anderson,* pp 638, 639):

"If, as provided in the act: 'Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable' (PA 1912 [1st Ex Sess], No 10, pt 7, § 1, as added by PA 1937, No 61, and amended by PA 1943, No 245 [CLS 1945, § 8485–1, Stat Ann 1945 Cum Supp § 17.-220]),* then it follows that aggravation of such 'ordinary diseases,' in the absence of a fortuitous happening which is an approximate cause of the aggravation, is not compensable. Such was the holding in Chief Justice BUTZEL's opinion in the *Hagopian Case, supra.*"

The confusion in thought in both of the above excerpts with respect to the amendment is clear. *Anderson* and *Hagopian* were part 2 cases, involving alleged accidents at work. Part 7, the occupational disease sections, was not involved. This talk, then, of an accident as being related to "an ordinary disease of life" or "characteristic of and peculiar to the employment," all coming from part 7 of the act, served only to confuse the application of 2 different concepts and led, probably inevitably, to the erroneous conclusion that aggravation of an ordinary disease in the absence of a fortuitous happening was not compensable. Yet it was well established by this time that aggravation of an ordinary disease of life by "accident" (as formerly defined) was compensable (*LaVeck* v. *Parke, Davis & Co., supra,* and cases cited therewith) and it should follow that aggravation of an ordinary disease by the newly-defined and broadened term "accident" should be no less compensable. We had said in *St. Clair* v. *A. H. Meyer Music House,* 211 Mich 285, 287, that, "The

* CL 1948, § 417.1 (Stat Ann 1950 Rev § 17.220).—REPORTER.

fact that applicant was predisposed because of disease to this form of attack is immaterial and has nothing to do with the question whether what befell him is to be regarded as an accident or not," and to my mind obviously, legislative substitution in 1943 of the words "personal injury" for "accident" made no change in the principle there stated. We should, subsequently to 1943, as well as before, look at the relationship between the employment and the claimed resultant disability rather than the nature of the victim's health prior to disablement. This is not to say that difficult questions of causation are not presented in the pre-existing defect or condition cases, but these difficulties of proof do not even remotely justify our reading into the personal-injury-by-single-event cases our judge-invented distinction between the healthy (who will and should be compensated if there is direct causation) and the sick (who, we have erroneously held, will not be compensated in spite of direct causation). What we have actually done in this area, as in so many others in the compensation field, is to invade the province of the trier of the facts. The determination of causation rests with the commission. We are not a super-compensation commission any more than we are a super-racing commission. *Hazel Park Racing Association, Inc.,* v. *Racing Commissioner,* 343 Mich 1, dissent, 10. We urge our return to our exercise of an appellate function.

It seems clear, on this phase of the case, that from the very inception of the act until 1943, compensation was awarded if an accident resulted in a disability, or aggravated an existing condition, whether such condition was an ordinary disease of life or not. The broadening of the act by both the 1937 amendments and the 1943 amendments (which latter corrected our former erroneous interpretation of the word "accident") did not serve to reduce this cov-

erage or lessen the protection under the act, and should not be so interpreted. The restrictive interpretation of the act here noted has not, unfortunately, been without parallel elsewhere in the act (see BLACK, J., in *Mack* v. *Reo Motors, Inc., supra,* dissent, 270, commenting upon our repudiation of an early case, our soundly-reasoned and widely-quoted intermission case, *Haller* v. *City of Lansing,* 195 Mich 753 [LRA1917E, 324]). Many of our early leading cases, written at a time when the act was new and its basic principles under fresh and careful examination, have been overlaid with layer after layer of doubt, vacillation, and confusion. We may well recall, with Mr. Justice Frankfurter in *United States* v. *Union Pacific R. Co.,* 353 US 112, 136 (77 S Ct 685, 1 L ed2d 693) that:

"This body of opinions, written by members of the court more steeped in public land law and more sensitive to the circumstances of the times than we can possibly be, seems to me to constitute too weighty a construction of section 2 to be now overturned. It is of course the court's duty to enforce the will of congress once that has been reasonably ascertained from the language in which congress expressed its will. But the ascertainment of what congress meant from what it said, in legislation like that before the court, does not gain clarity with time so as to displace the uniform construction put by this court from the beginning, almost 80 years ago, on what congress said. The court cannot in 1957 retrieve what congress granted in 1862. The hindsight that reveals the act as lavish or even profligate ought not to influence the court to narrow the scope of the 1862 grant by reading it in the light of a policy that did not mature until half a century thereafter."

We have spoken heretofore of the reluctance of our Court to correct its lamentable errors of the past. Twin guardians of the inviolability of the

error are now presented to us, the one made the more authoritative by its dress in Latin garb, *stare decisis,* the other being a "judicial assumption," namely, "that the legislature has been content with (our) interpretation because of its failure to exercise its independent prerogative to restate the provision."

There can, of course, be no disposition on the part of any responsible court to deal grossly with the doctrine of adherence to precedent. We need not expatiate upon the virtues thereof, the securing thereby of certainty and stability in the law, the protection of recognized rules of property and the repose of titles. As Cardozo put it in his Nature of Judicial Process (p 149): "I think adherence to precedent should be the rule and not the exception." And so, of course, it is. The great Justice amplifies his thought in the pages following (pp 150–152):

"I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment. We have had to do this sometimes in the field of constitutional law. Perhaps we should do so oftener in fields of private law where considerations of social utility are not so aggressive and insistent. There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years. In such circumstances, the words of Wheeler, J., in *Dwy* v. *Connecticut Co.,* 89 Conn 74, 99 (92 A 883, LRA1915E, 800, Ann Cas 1918D, 270), express the tone and temper in which problems should be met: 'That court best serves the law which recognizes that the rules of law which grew up in a remote

generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not be left to the legislature.' If judges have woefully misinterpreted the *mores* of their day, or if the *mores* of their day are no longer those of ours, they ought not to tie, in helpless submission, the hands of their successors."*

But this rule of common sense and sound judicial discretion (*i.e.*, adherence to precedent) should not be transformed into an implacable tenet. We are dealing with competing considerations, the desirability for certainty and stability in the law on the one hand, on the other the necessity that our interpretations of the law, particularly of remedial social legislation, keep abreast of changing social and economic forces in our society. The adjustment between these competing considerations is a matter of the utmost delicacy, an adjustment in which many complex factors, not the least of which is proper judicial restraint, all play their part. Where error is manifest and injustice rife, however, our course of action is clear. The principle involved was well expressed in 7 RCL, Courts, § 35, p 1008:

---

* The above quotation was persuasive to us in a prior situation where, similarly, our rule of law was completely out of harmony with modern conditions and where, it was said with much justification, "the application of the rule is more harmful than helpful and results in more injustice than it prevents." (*Bricker* v. *Green*, 313 Mich 218, 234, 235 [163 ALR 697].) Mr. Justice Cardozo's observations are equally applicable to the case before us and they lose none of their power with repetition.

"But the strong respect for precedent which is ingrained in our legal system is a reasonable respect which balks at the perpetuation of error, and it is the manifest policy of our courts to hold the doctrine of *stare decisis* subordinate to legal reason and justice, and to depart therefrom when such departure is necessary to avoid the perpetuation of pernicious error."

The classic condensation of the principle is found not in the text but in *Ellison* v. *Georgia R. Co.*, 87 Ga 691, 696 (13 SE 809), as cited in Moore and Oglebay's "Stare Decisis and the Law of the Case," 21 Tex L Rev 514, 534, wherein Chief Justice Bleckley holds:

" 'When an error of this magnitude, and which moves in so wide an orbit competes with truth in the struggle of existence, the maxim for a supreme court, supreme in the majesty of duty as well as in the majesty of power, is not *stare decisis*, but *fiat justitia ruat coelum*' (let justice be done though the heavens fall)."

To those who fear the unsettling effect of overruling precedent, it should be noted that certainty in the law is impeded, not aided, by a court's ostensible adherence to *stare decisis*, while avoiding the effect thereof through the process of distinguishing cases on trivial fact differentiations, which, having served their purpose in one case, are abandoned in the next. In short, the doctrine of *stare decisis* is beneficial and desirable but it should neither be used as a crutch, substituting the majesty of its authority for the drudgery of research and exposition, nor as a cyclone cellar in which we of the Court can find ready refuge from the hurricanes born of our own mistakes.

*Stare decisis,* then, upon both reason and authority, offers no obstacle to our judicial corrections of our past error. Has our error, however, been rati-

fied by the legislature? In other words, has the legislature, in fact, "been content" with our past interpretation of the word accident "because of its failure to exercise its independent prerogative to restate the provision?"

In shortest terms, bluntly put, the argument is that silence gives consent. It is suggested that we accord this catch phrase the dignity of a legal axiom. In its profundities, its cogency, its symmetry and its expression of fundamental truth, we are to find the answer to a complex question of statutory construction affecting the lives of thousands and our whole industrial economy. There is not a shred of justification therefor under these circumstances. Silence at best is ambiguous. Even in the law of evidence more than mere silence must be shown to impress upon the trier that silence was the equivalent of consent. See 4 Wigmore on Evidence (3d ed 1940), p 70; Lenhoff's Comments, Cases and Materials on Legislation, 816. It was Mr. Justice Rutledge, concurring in *Cleveland* v. *United States,* 329 US 14 (67 S Ct 13, 91 L ed 12), who put the matter in its proper setting (pp 22–24):

"Notwithstanding recent tendency, the idea cannot always be accepted that congress, by remaining silent and taking no affirmative action in repudiation, gives approval to judicial misconstruction of its enactments. See *Girouard* v. *United States,* 328 US 61, 69 (68 S Ct 826, 90 L ed 1084). It is perhaps too late now to deny that, legislatively speaking as in ordinary life, silence in some instances may give consent. But it would be going even farther beyond reason and common experience to maintain, as there are signs we may be by way of doing, that in legislation any more than in other affairs silence or nonaction always is acquiescence equivalent to action.

"There are vast differences between legislating by doing nothing and legislating by positive enactment, both in the processes by which the will of congress is

derived and stated and in the clarity and certainty of the expression of its will. And there are many reasons, other than to indicate approval of what the courts have done, why congress may fail to take affirmative action to repudiate their misconstruction of its duly-adopted laws. Among them may be the sheer pressure of other and more important business. See *Moore* v. *Cleveland R. Co.* (CCA), 108 F2d 656, 660. At times political considerations may work to forbid taking corrective action. And in such cases, as well as others, there may be a strong and proper tendency to trust to the courts to correct their own errors, see *Girouard* v. *United States, supra,* at 69, as they ought to do when experience has confirmed or demonstrated the errors' existence.

"The danger of imputing to congress, as a result of its failure to take positive or affirmative action through normal legislative processes, ideas entertained by the court concerning congress' will, is illustrated most dramatically perhaps by the vacillating and contradictory courses pursued in the long line of decisions imputing to 'the silence of congress' varied effects in commerce clause cases. That danger may be and often is equally present in others. More often than not, the only safe assumption to make from congress' inaction is simply that congress does not intend to act at all. *Cf., United States* v. *American Trucking Assns.,* 310 US 534, 550 (60 S Ct 1059, 84 L ed 1345). At best the contrary view can be only an inference, altogether lacking in the normal evidences of legislative intent and often subject to varying views of that intent. In short, although recognizing that by silence congress at times may be taken to acquiesce and thus approve, we should be very sure that, under all the circumstances of a given situation, it has done so before we so rule and thus at once relieve ourselves from and shift to it the burden of correcting what we have done wrongly. The matter is particular, not general, notwithstanding earlier exceptional treatment and more recent tendency. Just as dubious legislative history is at

times much overridden, so also is silence or inaction often mistaken for legislation."

Let us attempt, however, to apply the approval-by-silence doctrine to the precise situation before us. That is to say, let us assume that the silence of the legislature may, despite its ambiguity, be taken as an "intent to adopt such (*i.e.*, the antecedent judicial) construction." Let us, in fact, assume that the legislature, by formal and appropriate action, has so informed us. Where are we now?

The answer is that we are still in the wilderness of doubt and confusion. The fact of the matter is that prior judicial authority may be found in this jurisdiction on many inconsistent propositions in compensation law. Does the legislature intend to adopt the earlier cases decided by this Court or the later? Does it intend to adopt the cases saying yes or the cases saying no?

More specifically, does the legislature intend, for instance, to adopt the reasoning of *Robbins* v. *Original Gas Engine Co.*, 191 Mich 122? This case we find cited by the majority in *Wieda, supra,* and in one of today's opinions,* for the proposition that:

" 'It is not sufficient that there be an unusual and unanticipated result; the means must be accidental—involuntary and unintended. There must, too, be some proximate connection between accidental means and the injurious result.' "

In point of fact, however, the *Robbins Case* made the above-quoted statement of insurance law (from *United States Mutual Accident Association* v. *Barry,* 131 US 100 [9 S Ct 755, 33 L ed 60]), only to repudiate it. It rules precisely to the contrary, stating in part (pp 128, 129):

---

* See *post* 631.—REPORTER.

"It is doubtful, however, if in applying our statute, its general purpose being considered, the court should exactly follow the rules suggested and applied in the cases referred to. The statute seems to contemplate that an accidental injury may result by mere mischance: that accidental injuries may be due to carelessness, not wilful, to fatigue, and to miscalculation of the effects of voluntary action."

Thus the *Robbins* Court construed the meaning of "accident," to the "miscalculation of the effects of voluntary action." Is this the meaning adopted by the legislative silence? Will the legislature adopt *Watson* v. *Publix Riviera Theatre,* 255 Mich 115? In this case recovery was granted despite the fact that there was no fortuitous cause, the Court relying upon the holding in *Robbins,* last quoted. (*Nichols* v. *Central Crate & Box Co., supra,* 236, however, points to *Watson* as truly a fortuitous event, for in *Watson,* it is said "plaintiff's leg gave way and he fell.") Does the legislature intend to adopt *Hurley* v. *Selden-Breck Construction Co.,* 193 Mich 197? There a brick mason, doing his ordinary work in his ordinary way, suffered a hernia and received compensation despite, in fact, his pre-existing infirmity. Or, on the other hand, is it the presumed intent of the legislature to "adopt" only those cases in which it has been held, in reliance upon the long-overruled intermediate appellate English case, that compensation for industrial accident may be had only if there is a fortuitous cause?

The opinions submitted this date do not tell us. It is unnecessary to more than remind the bench and bar that the asserted doctrine of legislative adoption of judicial interpretations by either silence or, in fact, re-enactment, whatever the merits of the doctrine, can never be applied where the decisions themselves are in turmoil and conflict. This is a proposition to which we shall not cite authority. Nor shall

we vex the proposition, possibly implicit in what has gone heretofore, that a court has only one opportunity to interpret a statute. *Erie Railroad Co. v. Tompkins,* 304 US 64 (58 S Ct 817, 82 L ed 1188, 114 ALR 1487), conceding the constitutional overtones, may well be more persuasive on this point than Montesquieu.

Eula Sheppard should recover. The act authorizes compensation for accidents suffered at work, and the word "accident," after the 1943 amendments, *comprehending a personal injury due to a single event, includes both the unexpected cause and the unexpected result.* Her prior physical condition, whether in good health or poor, is completely immaterial to the recovery sought by her. There is no legislative impediment now, nor has there ever been, to our own correction of our own errors.

This case was submitted to us some time back. In the intervening period, as drafts of opinions, and conferences, have come and gone the Court has lost one cherished Brother and gained another. Under these circumstances, Mr. Justice VOELKER has deemed it proper to authorize our statement that, although he cannot participate, he is in full accord with the reasoning expressed in this opinion, and the result reached.

Affirmed. Costs to appellee.

ADDENDUM:

Since writing the above opinion, the various opinions in the case of *Coombe v. Penegor,* 348 Mich 635, have been circulated to the Court. It has been decided, apparently, that the Sheppard opinion is not to be published independently of *Coombe,* but concurrently therewith, and, also, that discussion of the result of the *Coombe Case* is pertinent as well to the Sheppard opinion. This being the case, we will, in the interests of clarity, now make certain observa-

tions respecting the *Coombe Case* in its relation to the case (Sheppard) primarily before us. For it is to be hoped that today's pair of compensation cases, Sheppard-*Coombe,* will not be as prolific of disagreement, controversy, and unsound distinctions as that prior ill-starred pair, *Hagopian-Anderson,*[*] both decided March 4, 1946.

We had pointed out to us in considerable detail in Eula Sheppard's case the importance of distinguishing between the workman with a pre-existing illness and him not so afflicted. Such cases were to be separately ruled, for precedents in the one case were not precedents in the other. Why? It was simple: one involved a pre-existing defect and the other did not. This distinction was both mischeivous and unwarranted but nevertheless insisted upon, with citation of cases assertedly in support thereof. A majority has now affirmed Eula Sheppard's award. She had no pre-existing disease or condition.

A majority is also affirming Ewart Coombe's award. Did he have a pre-existing ailment? His attending doctor says he "must" have had. The appeal board says he "may" have had. The defendants say he did have. Notwithstanding, it is proposed that his award of compensation under part 2 be affirmed. Authority? Eula Sheppard's case. Apparently it is no longer critical whether there was a pre-existing "disease or condition" or not. We agree. It never was. But what has become of *stare decisis,* which, so recently as Eula Sheppard, confronted us? What of certainty in the law?

Error is thus to be quietly interred. The embarrassment of explicit overruling by name of prior inconsistent decisions will be avoided. But despite the tortuous paths trod, particularly this date, despite the gusts of words, despite the forays of relent-

---

[*] *Hagopian* v. *City of Highland Park,* 313 Mich 608; *Anderson* v. *General Motors Corp.,* 313 Mich 630.—REPORTER.

less logic that have started on the broad highway of reason and ended in a cornfield of confusion—despite all this, one fact stands out: It is now agreed by others than the signers of this opinion that one suffering a personal injury due to a single event may receive award under part 2 without fortuitous cause and without regard to the claimant's pre-existing health.

Wisdom, we agree, should never be rejected merely because it comes late. (*Cf.*, *United States* v. *Union Pacific R. Co.*, 91 US 72 [23 L ed 224].) But let future scholars make no mistake over the position of those signing this opinion. Eula Sheppard and Ewart Coombe are each entitled to compensation, not because we "eliminate" accident from the act, not because of the presence or lack of a pre-existing ailment (we will not speculate on which, if either, may in the future, consistent with certain of today's opinions, be required) but *simply because each suffered an unexpected mishap (an accident, in our everyday speech) while doing his ordinary work in his ordinary way.* See *Wieda* v. *American Box Board Company*, 343 Mich 182, dissent, p 191.

Black, J., concurred with Smith, J.

Carr, J. (*dissenting*). The material facts involved in this proceeding are not in dispute. On the 14th of December, 1953, and for some time prior thereto, plaintiff was an employee of the defendant bank. Her work involved the handling of records kept in trays, which plaintiff in the course of her employment was required to lift from metal files in order to obtain proper access to the contents. Such trays weighed approximately 25 pounds each.

On the date mentioned plaintiff took hold of a tray for the purpose of lifting it. Her first attempt was unsuccessful and, as appears from her statements,

she jerked it. Such action loosened the tray but, as plaintiff claimed, resulted in a disability to her back. She sought compensation under the provisions of the workmen's compensation law.* The deputy commissioner before whom the hearing was held concluded that plaintiff was not entitled to an award and denied compensation. The appeal board reversed the action of the deputy, stating in substance that in its opinion plaintiff had sustained an accidental injury arising out of and in the course of her employment. An award was made accordingly and defendants, on leave granted, have appealed.

The record in the case does not contain testimony to support a finding that the occurrence in question was accidental. Plaintiff was proceeding in the ordinary course of her work and undertook to loosen the tray by an appropriate act. She was successful in doing so. The result that followed was not anticipated but such fact does not bring plaintiff's disability within the purview of part 2 of the compensation act. The question at issue was considered and discussed in *Wieda* v. *American Box Board Company*, 343 Mich 182, and in the prevailing opinion, which was signed by 7 members of the Court, it was held that:

"An accidental injury, to be compensable under the workmen's compensation act, must be more than merely an unusual and unanticipated result; the means must be accidental—involuntary and unintended, and there must be some proximate connection between accidental means and the injurious result (CL 1948, § 412.1 *et seq.*, as amended).

"An unfortunate result may not be given the retroactive effect of making a particular event or happening accidental in nature which was not of such char-

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.*, as amended [Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 17.141 *et seq.*]).

acter when it took place and, thereby, impose liability under portion of workmen's compensation act requiring that injury to be compensable must have been proximately caused by an accident (CL 1948, § 412.1 *et seq.,* as amended)." (Syllabi 2 and 3.)

A repetition of the reasons on which the holding of the Court was based would serve no useful purpose. The question involved is primarily one of the interpretation of the workmen's compensation law and the term "accidental injury" must be given its ordinary meaning.

A situation analogous to the case at bar was involved in *Hooks* v. *City of Wyandotte,* 278 Mich 232. There the plaintiff's decedent was employed by defendant city in collecting refuse. While he and his fellow workman were lifting a drum of ashes he suffered a disability. Compensation was sought under part 2 of the act and an award in plaintiff's favor was appealed to this Court. It appeared from the record that the drum in which the refuse was contained was frozen to the ground. In the process of jerking it loose, and raising it, Hooks suffered the disability in question. In reversing the award in plaintiff's favor it was held that the testimony did not "indicate that the injury occurred otherwise than when the work was being done in the usual and ordinary way and without the intervention of any untoward or accidental happening. That no accident, within the meaning of the compensation law, was shown is settled by repeated decisions. (Citing cases.)"

Of like nature was the decision of the Court in a unanimous opinion rendered in *Nichols* v. *Central Crate & Box Company,* 340 Mich 232. There the plaintiff in the course of his employment undertook to move a log into position for sawing. He sought to raise the log from the ground with a cant hook. His first attempt was unsuccessful whereupon he gave

it a jerk, applying sufficient force to lift the log.. However, he suffered an injury in so doing which resulted, as it was claimed, in disability. He sought compensation under part 2 of the statute. The compensation commission determined the matter in favor of the plaintiff and on appeal it was contended that the award should be upheld on the theory that the result to him from the occurrence in question was unexpected and unusual even though the cause thereof was not of such character. The Court rejected the contention and set aside the award. The reasons underlying the decision are applicable to the determination of the case at bar.

In writing for affirmance of the award in plaintiff's favor, Justice EDWARDS takes the position that part 2 of the workmen's compensation act does not require that the disability shall be the result of an accidental occurrence in order to be compensable. Reliance is placed on amendments to the statute made by PA 1943, No 245. No change was made by said act in the title in its then form, the reference to compensation for accidental injuries being retained therein. In *Hagopian* v. *City of Highland Park,* 313 Mich 608, it was held, after reference to the amendments made to the statute by the cited act of 1943, that an accidental injury was essential in order to authorize an award for compensation under part 2. An examination of the case will disclose that full and careful consideration was given to the matter. The decision has been repeatedly cited and followed.

In arguing that compensation may be awarded under part 2 even though the injury is not accidental, Justice EDWARDS claims that this Court has in prior decisions so held. In support of his statement he cites the following cases: *Anderson* v. *General Motors Corp.,* 313 Mich 630; *Kasarewski* v. *Hupp Motor Car Corp.,* 315 Mich 225; *Schinderle* v. *Ford Motor Co.,* 316 Mich 387; *Samels* v. *Goodyear Tire & Rub-*

*ber Co.*, 317 Mich 149; and *Croff* v. *Lakey Foundry & Machine Company*, 320 Mich 581. An examination of these decisions indicates that in none was there an unequivocal holding by a majority of the Court that PA 1943, No 245, had eliminated the necessity for an accidental injury as a basis for compensation under part 2. In *Anderson* v. *General Motors Corp.*, 2 members of the Court thought the award in plaintiff's favor should be set aside, and 2 concurred with Justice NORTH who in writing for affirmance pointed out that the plaintiff's disability resulted from causes and conditions characteristic of the work in which he was engaged. On such ground the case was differentiated from *Hagopian* v. *City of Highland Park*. The basis of the holding was discussed in *Arnold* v. *Ogle Construction Company*, 333 Mich 652, 665.

In the *Kasarewski Case* it was held that compensation could not be recovered for aggravation of a pre-existing hernia not resulting from an accident arising out of and in the course of the employment. In *Schinderle* v. *Ford Motor Co.*, the testimony of the plaintiff disclosed that his disability was suffered as the result of slipping, causing an injury to his back. In *Samels* v. *Goodyear Tire & Rubber Company*, 3 members of the Court concluded that the award in plaintiff's favor should be sustained on the ground that he had suffered an occupational injury under part 7 of the statute. Three took the position that the award might be sustained under part 2, and the other 2 members of the Court came to the conclusion that the award could not be sustained under part 2 because his disability did not result from an accidental occurrence, and that the proceeding should be remanded to the department for consideration of the question as to the plaintiff's right to compensation under part 7. In *Croff* v. *Lakey Foundry & Machine Company* the Court was evenly divided.

These decisions indicate differences of opinion among the members of the Court as to the matter at issue, but it may not be said that the holding in *Hagopian* v. *City of Highland Park,* and in cases following it, was overruled by said decisions, or any of them.

The interpretation and application of part 2 of the compensation act came again before the Court in *Arnold* v. *Ogle Construction Company, supra,* where it was held that plaintiff's injury was not accidental in character and that, in consequence, the award in his favor could not be sustained. Attention was directed to the proposition that under article 5, § 21, of the Constitution (1908), it is required that the title of an act shall express its object. In case of a variance, the principle is too well settled to require citation of authority that provisions in the body of the act that are not in accord with the title, or embraced within its terms, are invalid. Part 7 of the act was added by PA 1937, No 61, the title being broadened at that time to permit compensation for occupational injuries and diseases. The reference in the title to accidental injuries was retained, thus indicating that the legislature did not at that time intend to change in any way the scope or application of part 2. As before noted, the title was not amended by PA 1943, No 245. The majority opinion in the *Arnold Case* speaks for itself, and further reference thereto is not required. It and other decisions of like import were cited and followed in *May* v. *A. H. Powell Lumber Company,* 335 Mich 420, in which the award in plaintiff's favor, made under part 2, was not sustained because of an absence of testimony to support a finding of an accidental injury. In reaching this conclusion reference was made to *Schlange* v. *Briggs Manufacturing Co.,* 326 Mich 552, relied on by the appeal board in the instant proceeding, and it was pointed out that the testimony in that case indicated

that Schlange had sustained an accident by being jerked or thrown against the equipment that he was operating.

In *Nichols* v. *Central Crate & Box Company, supra,* it was held that plaintiff was not entitled to compensation because his disability did not result from an accidental injury. It may be noted in passing that the decision was unanimous. In *Wieda* v. *American Box Board Company, supra,* the workmen's compensation commission denied an award to plaintiff on the ground that his disability did not result from an accidental injury suffered in the course of and arising out of his employment, citing in support of the conclusion *McGregor* v. *Conservation Department,* 338 Mich 93. This Court affirmed the order on the ground that the plaintiff's disability did not result from an occurrence accidental in nature. In his opinion Justice EDWARDS seems to criticize the quotations hereinbefore set forth from the syllabi in the *Wieda Case.* Apparently he disagrees with the conclusion there reached. However, 7 members of the Court joined in the prevailing opinion, and it may be noted in passing that the dissenting opinion of Justice SMITH rested on the theory that the occurrence involved was as a matter of fact and of law accidental in nature because of the result.

Without citing other recent decisions we think that the foregoing clearly indicate the position that this Court has taken with reference to the scope of part 2 of the compensation act. We may not extend its application by judicial fiat. We may not, in other words, encroach on the functions of the legislature. As before stated, the proposition before us is primarily one of statutory construction. We are bound to apply the compensation law in accordance with the purpose for which it was enacted, and in such manner as to carry out the intent of the legislature as therein expressed. The general rule of interpre-

tation suggested in *Smith* v. *Wilson Foundry & Machine Co.,* 296 Mich 484, is applicable here. It was there said (p 487):

"We have in mind that the workmen's compensation law, being in derogation of the common law, must be strictly construed. *Andrejwski* v. *Wolverine Coal Co.,* 182 Mich 298 (6 NCCA 807, Ann Cas 1916D, 724). It must be construed and administered according to its terms, *Wilcox* v. *Clarage Foundry & Manfg. Co.,* 199 Mich 79, and its scope may not be enlarged beyond the terms of its enactment. *Gordon* v. *Smith Brothers,* 284 Mich 456."

The case should be reversed and remanded, with directions to the appeal board to set aside the award.

SHARPE, J., concurred with CARR, J.

EDWARDS, J. (*concurring*). The workmen's compensation appeal board found that plaintiff, Eula Sheppard, was disabled as a result of "an accidental personal injury arising out of and in the course of employment" by the defendant bank on December 14, 1953. The record discloses that the plaintiff became disabled as a result of a back injury she received in the course of her employment lifting file trays of the approximate weight of 25 pounds when 1 of them stuck in the file and she gave a "yank" to free it. The appeal board did not find, nor does the record disclose, any other source of the injury or disability than the single event described above.

On appeal to this Court much of the debate between the parties has pertained to whether or not the fact situation referred to above represented an unexpected or fortuitous event of an "accidental" nature. This Court believes, however, that there is no necessity in this case to pass on this question since under any construction of the record and the findings of the appeal board which are supported by the rec-

ord, it is clear that plaintiff's disabling personal injury arose out of and during the course of her employment. This Court has held on numerous occasions that the 1943 amendment to the workmen's compensation act* eliminated any requirement for finding an accidental injury precedent to recovery by one who suffers a personal injury arising out of and during the course of his occupation. *Anderson* v. *General Motors Corp.* (1946), 313 Mich 630; *Kasarewski* v. *Hupp Motor Car Corp.* (1946), 315 Mich 225; *Schinderle* v. *Ford Motor Co.* (1947), 316 Mich 387; *Samels* v. *Goodyear Tire & Rubber Co.* (1947), 317 Mich 149. See, also, *Croff* v. *Lakey Foundry & Machine Co.* (1948), 320 Mich 581.

It is, of course, true that almost 9 years after the amendment referred to was adopted, and had been repeatedly applied by the appeal board of the workmen's compensation commission and by the Supreme Court in the cases listed above, a majority of the Supreme Court reversed its holding on the current point in dispute in the case of *Arnold* v. *Ogle Construction Company* (1952), 333 Mich 652. There 4 members of the Court joined Justice Carr in an opinion holding that the plain effort of the legislature in 1943 to eliminate the requirement of "accident" in the workmen's compensation act was invalidated by the continuation of the term "accidental injury" in the title of the act, thereby holding exactly contrary to the prevailing opinions in the *Anderson, Kasarewski, Schinderle, Samels,* and *Croff Cases* referred to above.

Since the *Arnold Case* (1952), subsequent decisions have dealt primarily with the difficult and tenuous argument as to what sort of fact situation relat-

---

* For references to the original act, its amendments and sections as hereinafter discussed, see PA 1912 (1st Ex Sess), No 10 (CL 1948, § 411.1 *et seq.,* as amended [Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 17.141 *et seq.*]).

ing to injury constitutes an unexpected or fortuitous event, and, hence, an "accident." *Nuyen* v. *U. S. Foundry Corp.* (1955), 342 Mich 70; *Simpson* v. *Matthes* (1955), 343 Mich 125; *Brazauskis* v. *Muskegon County Board of Road Commissioners* (1956), 345 Mich 480; *Beltinck* v. *Mt. Pleasant State Home and Training School* (1956), 346 Mich 494.

Paralleling the decisions referred to above, but plainly dealing with additional issues not involved in the instant case, are those cases in which the Court has dealt with claims for compensation under the 1937 and 1943 amendments filed by persons who claimed compensation as a result of heart disease, heart attack, or stroke. *Hagopian* v. *City of Highland Park* (1946), 313 Mich 608; *O'Neil* v. *W. R. Spencer Grocer Co.* (1946), 316 Mich 320; *Schlange* v. *Briggs Manufacturing Company* (1950), 326 Mich 552; *May* v. *A. H. Powell Lumber Co.* (1953), 335 Mich 420; *McGregor* v. *Conservation Department* (1953), 338 Mich 93; *Nichols* v. *Central Crate & Box Company* (1954), 340 Mich 232; *Wieda* v. *American Box Board Company* (1955), 343 Mich 182.

Involved in these cases were defendant claims that the injury considered was due to an ordinary disease of life (CL 1948, § 417.1 [Stat Ann 1950 Rev § 17. 220] ), or to some pre-existing condition or disease.

These issues are not posed in the simple personal injury case currently before us and, hence, are not considered or decided herein.

The sole issue posed by appellants is: "Do the undisputed facts show that the plaintiff sustained an accidental personal injury?"

For purposes of this opinion our present question may be stated: Where a disabling personal injury has been suffered by a compensation claimant, arising out of and during the course of employment, should this Court in interpreting the present workmen's compensation act require proof of a causal

"accident" precedent to recovery? The decision is purely one of statutory interpretation. Rights under the workmen's compensation act were created by legislative enactment, and plainly the legislature had and has the power properly to amend its own words.

Let us then once again examine the history of the legislature's attempt to settle this question, a history, incidentally, previously recited by Justice Bushnell in *Anderson,* Justice Dethmers in *Croff,* Justice North in *Arnold,* and Justice Smith in *Wieda.*

In 1941 the Michigan legislature authorized the creation of a study committee to undertake a general revision and modernization of the workmen's compensation statute. House Resolution No 78, 2 House Journal 1941, p 1779.

Such a committee was appointed and in 1943 made its report. House Journal 1943, p 318 *et seq.* At the same session of the legislature (1943), outgoing Governor Murray D. Van Wagoner in his exaugural message hoped "that this legislature will see fit to follow its recommendations." House Journal 1943, 40 at page 42. Incoming Governor Harry F. Kelly, now a member of this Bench, in a legislative message referred to the anticipated committee report and recommended "that amendments to the Michigan workmen's compensation act be made to bring about comprehensive liberalization of its present provisions." House Journal 1943, 31 at page 39.

The report of the committee read as follows:

"One change in this part of the proposed act abolishes the schedule of 31 occupational diseases contained in the 1937 amendment to the present law and also abolishes the requirement that injuries be accidental." House Journal 1943, at page 320.

Two members of the committee filed a supplemental report which stated, in part:

"But we do insist that there should not be deleted from the present law, as the other 2 voting members propose, the fact that all other personal injuries must be accidental." House Journal 1943, 334 at page 337.

With these reports before it the legislative session of 1943 adopted a comprehensive series of amendments (PA 1943, No 245), among which the following pertain directly to the question currently before the Court.

Part 1, § 10(a) dealing with the liability of an employer to a subemployee, prior to the 1943 amendment spoke of "accidental injury;" the 1943 amendment deleted "accidental."

Part 2, § 7 says that dependency shall be determined as of the date of "injury;" prior to 1943 this read as of the date of "accident."

Part 2, § 11 was rewritten, in part, in 1943 thereby eliminating 3 usages of "accidental injury;" in addition, in 2 other places "accident" was specifically changed to "injury."

Part 2, § 12 deals with death benefits; the word "accident" was deleted and the word "injury" added in 2 places by the 1943 amendment.

In part 2, § 15 prior to 1943 "accident" or "accidental personal injury" appeared in a total of 6 places. The 1943 revision served to substitute "injury" for "accident" in 4 places, eliminate "accidental" in another; but it retained—phrased clearly in the alternative to the word "injury"—1 reference to "accident."

Part 3, § 13 was practically rewritten in 1943, but prior thereto this section provided for filing for judgment in the county where the "accident" occurred; subsequently it provided for filing in the county where the "injury" occurred.

Part 3, § 17 dealing with records and reports of injuries, employed "accident" or "accidental injury"

a total of 36 times prior to 1943. In that year it was greatly shortened and practically rewritten. It now requires the employer to report "the time and cause of the accident, the nature and extent of the injury and disability."

Part 4, § 1 contained 3 references to "accident" or "accidental injury" prior to 1943. While this section was amended in that year the 3 presently considered references were not altered. The section has, however, been amended on 3 different occasions since 1943 (PA 1951, No 151; PA 1952, No 107; PA 1953, No 198). The 1952 amendment specifically inserted "compensable injuries or compensable occupational diseases" in lieu of the 3 aforementioned references.

Part 7, § 2, which was added to the act by the 1937 amendment (PA 1937, No 61), originally spoke of "personal injury by accident;" in 1943 this was amended to read simply "personal injury."

The key section of the act, part 2, § 1, was likewise amended in 1943 to read as follows:

"[An employee, who] receives a personal injury arising out of and in the course of his employment by an employer who is at the time of such injury subject to the provisions of this act, shall be paid compensation in the manner and to the extent hereinafter provided, or in case of his death resulting from such injuries such compensation shall be paid to his dependents as hereinafter defined. [The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death.]*"      (CL 1948, § 412.1 [Stat Ann 1950 Rev § 17.151].)

---

* Bracketed material added by 1943 amendments.

While this amendment did not eliminate any reference to "accident," since there was none in the paragraph as previously written, it is significant that in the material added in 1943 the legislature used the term "a single event" where "accident" would undoubtedly have been used but for the legislative intent to dispense with this requirement.

It should be noted that no change was made in the title of the act at the time of this series of amendments, the title already having been amended in 1937 by adding thereto the terms "occupational injuries or disease" in order to provide for part 7 which was added in that year. Since that amendment the crucial portion has read:

"Providing compensation for the disability or death resulting from occupational injuries or disease or accidental injury to or death of employees."

It is, of course, obvious that industrial injuries arising from "accidents" (fortuitous events by this Court's previous definition) continue to be compensable under these amendments. The problem dealt with by these amendments was that posed by industrial injuries resulting from ordinary work performed in an ordinary manner and previously held noncompensable because "nonaccidental" under the Court's previous definition. There is thus nothing inconsistent with the stated legislative purpose in the term "accidental injury" being retained in the title of the act where it is in the clear alternative to "occupational injuries."

The interpretation of the 1943 amendments was first made by the workmen's compensation commission. Its interpretation is clearly mirrored in an article in the Detroit Bar Quarterly (Detroit Lawyer), Jan 1945, Vol 13, pp 8, 10, written by James L. Hill, a member of the commission at that

time, and entitled "Progress in the Field of Work-men's Compensation." Mr. Hill, referring to part 2, § 1, as quoted above, said:

"That section definitely provides compensation for a personal injury due to a disease, for a personal injury not attributable to a single event and for a personal injury due to a single event. If it was intended to compensate for a personal injury due to a single event *only if such event was an accidental occurrence*, then the word 'accident' would undoubtedly have been used in section 1 rather than the term 'single event.'

"It has been argued that the term 'personal injury' as now used throughout the act cannot be construed to include such injury for the reason that the title of the act limits compensation benefits to cases of 'disability or death resulting from occupational injuries or disease or accidental injury.' It has been claimed that the title of the act is not broad enough to bring within its scope a personal injury due to a single event unless the cause of the personal injury is some unusual, unexpected or fortuitous occurrence. That claim is based on the contention that the term 'occupational injuries' as used in the title of the act is limited to injuries which occur little by little, drop by drop, and which cannot be described accurately as an occupational disease. In the writer's opinion, there is no reason for so limiting the scope of the term 'occupational injuries.' It is a broad term and easily embraces an injury due to a single event whether accidental or not. It would be a strained construction, indeed, to hold that a back strain resulting from a single heavy lift could not be classified as an occupational injury."

The interpretation of the legislative attempt to eliminate "accidental" from the statute first came before the Supreme Court in 2 cases, decisions in which were handed down on the same day, March 4, 1946. In the first of these, *Hagopian* v. *City of High-*

*land Park, supra,* Justice Butzel wrote for denial
of compensation to a Highland Park refuse worker
who suffered a heart attack during the course of his
normal day's work, arguing strongly that the re-
quirement of an accidental event had not been elimi-
nated from the statute.   The Court divided 5 to 3
with Justice Bushnell authoring the dissenting
opinion urging affirmance of the award and holding
that the requirement of an "accidental injury" had
been eliminated by the 1943 amendments.

In *Anderson* v. *General Motors Corp., supra,* is-
sued the same date, the Court, by a 6 to 2 margin,
affirmed an award to a claimant who, while engaged
in his normal day's occupation of lifting gun barrels,
suffered a disability diagnosed as a probable "rup-
tured nucleous polyposis" (*sic*).

In an opinion concurring in affirmance Justice
North explained his vote on both prevailing sides
as follows:

"Decision in the instant case is not controlled by
Justice Butzel's opinion in *Hagopian* v. *City of
Highland Park,* 313 Mich 608, for the following rea-
sons.   In the instant case Anderson's personal in-
jury clearly arose out of and in the course of his
employment.   His injury was not at all in the nature
of an ordinary disease 'of life to which the public is
generally exposed outside of the employment,'
which would render such an injury noncompensa-
ble." *Anderson* v. *General Motors Corp., supra,* p
638.

Justice Bushnell, after reviewing the history of
this legislation in much the same fashion as outlined
above, said in the prevailing opinion in the *Anderson
Case,* at page 636:

"The conclusion is inescapable that the legisla-
ture had squarely before it the question of whether
or not the then requirements of the act as to acci-

dental injury should be retained or abolished, and that it deliberately arrived at the decision to abolish such requirements. That this was the intent of the legislature is indicated in a chart submitted by plaintiff, which quotes portions of 6 sections of the act before the 1943 amendment, and the same portions thereafter in each of which the words 'accidental' or 'accident' have been deleted and the word 'injury' substituted therefor.

"During the 2-1/2 years since this amendment of the act, we apprehend that the department of labor and industry has been construing the law to mean that an injury to be compensable does not have to be accidental in nature. Although we have no information in the record before us as to the number of claims so determined, we are able to conclude from the paucity of applications for writs of certiorari involving this point that the department's interpretation has been generally accepted by the profession. We feel sure that such interpretation eliminates the seeming need for doubtful testimony as to slipping, falling, et cetera, which is replete in cases prior to the amendment."

In *Schinderle* v. *Ford Motor Co.* (1947), *supra,* Justice REID, speaking for the unanimous Court, affirmed an award of compensation with the following language (pp 394, 395):

"The deputy commissioner found, 'That on 11–26, 1943 the above named employee did receive a personal injury arising out of and in the course of his employment by the above named employer.' This award was affirmed by the department on appeal. The award is construed by us to be a finding that the injury was, as stated in the report of defendant, *i.e.,* myositis. The injury is attributable to a single event, which occurred as plaintiff turned while handling a heavy board. The myositis did not exist before the injury.

"Under the authority of *Anderson* v. *General Motors Corp.,* 313 Mich 630, the injury in the instant case is compensable."

Since in the *Schinderle Case* there was testimony of a "slip," the positions of the various Justices may not have been completely stated therein.

In *Samels* v. *Goodyear Tire & Rubber Co.* (1947), *supra,* while upholding an award of workmen's compensation to a plaintiff who suffered epicondylitis after 7 months of work for defendant as a tire builder, the thinking of the Court was expressed in 4 separate opinions. Justice Reid wrote for affirmance under part 7 of the act (Justice Butzel concurring); Justice Boyles wrote a separate opinion also concurring in affirmance under part 7. Justice North held for affirmance under a theory of nonaccidental personal injury under the authority of *Anderson, supra* (Justices Bushnell and Dethmers concurring). Justice Sharpe dissented (concurred by Justice Carr).

In *Croff* v. *Lakey Foundry & Machine Co., supra,* Justice Dethmers wrote the prevailing opinion affirming an award of compensation by a 4–4 division to a core setter who suffered a back injury during the course of heavy lifting which was normal to his job. Justice Dethmers' opinion says, in part, as follows (pp 585, 586):

"Mr. Justice Bushnell's opinion in the *Hagopian Case* directs attention to the number of instances in which the words 'accident' and 'accidental' were eliminated from the act by the 1943 amendment and the term 'injury' substituted for the terms 'accident' and 'accidental injury.' His opinion in the *Anderson Case* points out that this was not done inadvertently or merely for the purpose of substituting a term which would have equal application to accidental injury and occupational disease, but rather that the legislature acted in response to a specific committee

recommendation to abolish the requirement that an injury must be accidental to make a resultant disability compensable."

In *Arnold* v. *Ogle Construction Co.* (1952), *supra,* a majority of the Court finally reversed its interpretation of the effect of the 1943 amendments pertaining to nonaccidental personal injuries. In again reviewing the entire history of the legislative enactment in similar fashion as originally undertaken by Justice BUTZEL in *Hagopian* v. *City of Highland Park* (1946), *supra,* Justice CARR held that proof of accidental injury was still required in spite of the 1943 amendments because the legislature had not in 1943 amended the title of the act to eliminate therefrom the term "accidental injury." Four Justices concurred with Justice CARR. Justices DETHMERS and BUSHNELL concurred in Justice NORTH's dissenting opinion which is so pertinent to our current problem as to suggest quotation, with our complete approval (pp 667–669):

"The real reason urged in support of the conclusion that nonaccidental injuries are not compensable, is that the title to the workmen's compensation act (as we repeatedly held prior to the 1937 amendment) was not broad enough to permit awards of compensation under part 2 of the act for nonaccidental injury. This, we think, ignores the combined effect of the 1937 amendment and the 1943 amendment.

"Prior to 1937 the act provided compensation only in event of *one cause* of a personal injury or death of an employee—*i. e., an accidental injury.* This limitation was expressed in the title which prior to the 1937 amendment (so far as here material) read:

" 'An act * * * providing compensation for the accidental injury to or death of employees.'

"But the title as amended in 1937 was and is not confined to a single ground—*i. e.,* accidental injury, for awarding compensation. Instead by the 1937

amended title the possible scope of the act was broadened so that it included 3 grounds or circumstances under which an injured employee (or his dependents in event of his death) might receive an award of compensation. This 1937 amended title (so far as material here) provides for 'compensation for the disability or death resulting from [1]* occupational injuries [2]* or disease [3]* or accidental injury to or death of employees.'

"While it is a fair inference that at the time the primary purpose of the 1937 amendment was to make the act ample to include occupational diseases, as specified, nonetheless it was also sufficient to include 'occupational injuries' as well as accidental injuries. The reason that thereafter, and prior to the 1943 amendment, we repeatedly held a nonaccidental injury was not compensable was that the act itself in part 2 still provided for compensation only in event that the injury was accidentally sustained. Evidently to overcome this restriction the legislature in 1943 materially amended part 2 of the act. As noted by Mr. Justice Bushnell in the *Hagopian Case, supra,* 'the words "accident" and "accidental" were used 54 times in the act before its amendment (in 1943) and now both words are used only 5 times;'† and Justice Bushnell further comments (p 613):

" 'It is obvious to even the ordinary lay reader that the scope of the title of the act in question is

---

* Bracketed matter supplied.—Reporter.

† As noted earlier in this opinion, 3 of these usages have now been eliminated. The words "accident" or "accidental" are now found in the relevant sections of the workmen's compensation statute in only 2 places (once in pt 2, § 15, and once in pt 3, § 17). In each instance the use is clearly alternative to the word "injury." Taking the statute as a whole, in addition the word "accidental" is retained in the title of the act alternatively phrased to "occupational injuries," and the word "accident" is retained in the names of the industrial accident board and the State accident fund and may likewise be found, apparently by sheer inadvertence, retained in pt 5, § 5, dealing with premiums and assessments under the State accident fund. (See CLS 1954, § 412.15, CL 1948, § 413.17, title, CL 1948, §§ 413.1, 415.2 and 415.5 [Stat Ann 1955 Cum Supp § 17.165, Stat Ann 1950 Rev § 17.191, title, Stat Ann 1950 Rev §§ 17.174, 17.200 and 17.203].)

sufficient to embrace the provisions of the 1943 amendment, and that this amendment in connection with the title does not offend or contravene the mandate of article 5, § 21 of the 1908 Constitution of this State.' "

"If subsequent amendments to the body of an act would be within the scope of the title, if they had been enacted at the same time the title was amended, they should still be considered as within the amended title. In *Common Council of Detroit* v. *Schmid,* 128 Mich 379, 388 (92 Am St Rep 468), we said:

" 'It seems, therefore, that the law is fully settled in this State that whatever might have been incorporated into the original act under the title of such original act may be added by way of amendment under the most general title.'

"The last above quotation is approvingly embodied in *Surtman* v. *Secretary of State,* 309 Mich 270, 277. Thus, since the 1937 amendment to the workmen's compensation act, we have an act entitled sufficiently broad to cover 'occupational injuries' sustained by employees, provided such injuries arise out of and in the course of the employment—*i. e.,* that there be a causal relation. And in the body of the act, as amended in 1943, numerous changes were made by substituting 'personal injury' for 'accidental injury.' Scarcely any reason for such changes can be given except that the legislature intended thereby to delete from the act the limitation that an injury sustained by an employee would not be compensable except it was caused accidentally or by some fortuitous circumstance.

"In view of the foregoing we think it must be held that since the 1943 amendment an occupational injury suffered by an employee is not noncompensable merely because it is nonaccidental."

Justice SMITH's dissent in *Wieda* (1955), *supra,* added to this discussion of the problem of title the following pertaining to the intent of the legislature in the 1943 amendment (p 203):

"It will be observed that the insertion of the suggested word 'accidental' has been rejected. It should also be noted that the same amendment undertook a wholesale excision of the words 'accident' and 'accidental injury,' from other portions of the act, and the substitution of the word 'injury.' *Anderson* v. *General Motors Corporation, supra.* Our words in *People* v. *Adamowski,* 340 Mich 422, 429, would seem particularly applicable at this point:

" 'When the legislature affirmatively rejected the statutory language which would have supported the State's present view, it thereby made its intention crystal clear. We should not, without a clear and cogent reason to the contrary, give a statute a construction which the legislature itself plainly refused to give.' "

It might be noted that Justice BLACK in his opinions in the *Beltinck* and *Brazauskis Cases, supra,* cited and relied upon Justice SMITH's dissent in the *Wieda Case.*

In Justice CARR's opinion in the instant case he quotes from the headnotes in the *Wieda Case* as follows:

"An unfortunate result may not be given the retroactive effect of making a particular event or happening accidental in nature which was not of such character when it took place and, thereby, impose liability under portion of workmen's compensation act requiring that injury to be compensable must have been proximately caused by an accident (CL 1948, § 412.1 *et seq.,* as amended)." (Syllabus 3.)

The above quotation referring to "portion of workmen's compensation act requiring that injury to be compensable must have been proximately caused by an accident" is completely erroneous; there is no such portion of the workmen's compensation act currently on the statute books in Michigan, nor was there at the time of the *Wieda* decision,

and this mistake should not be compounded by being included in an opinion of this Court.

It remains then only to be said that this Court now reverts to its original interpretation of the 1943 amendment and holds that a personal injury arising out of and during the course of employment under that amendment does not have to be "accidental" in origin as a condition precedent to recovery. The holding to the contrary previously discussed in *Arnold* v. *Ogle Construction Co., supra,* and subsequent decisions is hereby overruled.

The award of the workmen's compensation commission should be affirmed, with costs to the appellee.

ADDENDUM.

"Say not, the struggle naught availeth."*

Six members of our Court have now written on this case. This illustrates the long history of the controversy which, I dare to predict, is here resolved.

Out of all the welter of our words and variety of reasons comes this clear-cut conclusion: *There is no longer a requirement that "an accident" or "a fortuitous" event (this Court's previous definition of "accident") be proven as a condition precedent for recovery of workmen's compensation for a single-event personal injury which arises out of and during the course of employment.* A clear majority of the Court (including the writer) takes the view that this conclusion results inevitably from the 1943 amendments hereby again given their intended effect. Several Justices (including the writer) likewise feel that such a requirement (*i. e.,* proof of "fortuitous event") need never have been made for the reasons outlined in Justice SMITH's eloquent dissent in *Wieda* (*Wieda* v. *American Box Board Co.,* 343

---

* Arthur Hugh Clough, first line of poem by same name "Say not the Struggle Naught availeth." Oxford Book of English Verse 1250–1900, p 880.

Mich 182) since the word "accident" previously contained in the act as a requirement should be defined to include both the unexpected event and the unexpected result.

Justice Smith's opinion in the instant case deals also with those cases in which the Court appeared to indicate that where there was proof of a pre-existing ailment or injury, then, in spite of the 1943 amendments, proof of "accident" as the Court had previously construed it was still required. This question was not dealt with in the preceding opinion because as indicated the record shows no pre-existing ailment or injury in this case. In a companion case (*Coombe* v. *Penegor,* 348 Mich 635) decided this day, where there was evidence of a pre-existing ailment, we also lay this ghost. The holding in this latter case of a clear majority of the Court (including the writer) indicates a second clear-cut conclusion: *Under the workmen's compensation statute and the 1943 amendments thereto, evidence of a pre-existing ailment or injury does not create any requirement of proof of "accident" or "fortuitous event" (this Court's previous definition of "accident") as a condition precedent to recovery granted other statutorily-required proof.*

Dethmers, C. J. (*concurring*). In *Croff* v. *Lakey Foundry & Machine Company* (1948), 320 Mich 581, 585, 586, I wrote:

"I am persuaded that it was the legislative intent, in enacting the 1943 amendment,* that disabilities resulting from personal injuries (as distinguished from disabilities resulting from the aggravation of pre-existing disease or condition) which arise out of and in the course of employment should thereafter be compensable, even though not occasioned by accident or fortuitous event."

* PA 1943, No 245.

I pointed out that the majority position affirming an award of compensation in *Anderson* v. *General Motors Corp.*, 313 Mich 630, set forth in 2 opinions, was predicated on no different grounds than acceptance of that view of the 1943 amendment. I further wrote (p 584):

"Subsequently, the continued adherence of a majority of this Court to the majority view in the *Anderson Case* has been brought into question in *Kasarewski* v. *Hupp Motor Car Corp.*, 315 Mich 225; and in *Samels* v. *Goodyear Tire & Rubber Co.*, 317 Mich 149. The instant case affords an opportunity for clarification."

Clarification of Court alignment there was, the decision in *Croff* disclosing a Court evenly divided on the question of the effect of the 1943 amendment.

From *Croff*, in 1948, until *Arnold* v. *Ogle Construction Co.*, 333 Mich 652, in 1952, that 4-to-4 division of the Court apparently persisted. The latter case revealed a further shifting of the *Anderson* majority. a new 5-to-3 majority holding that an accidental or fortuitous causal event was still prerequisite to compensation under part 2 of the act, despite the 1943 amendment. Mr. Justice BUSHNELL and I joined in the vigorous dissent written by Mr. Justice NORTH. It was now clear that the lines had become fixed and the law on the subject determined. Justices NORTH, BUSHNELL and I, the dissenters, believing it essential to the orderly processes of a court of last resort and confidence therein, concluded that we ought thereafter to consider ourselves bound by the holding of the majority, without stubborn persistence in and reiteration of our own view, at least until such time as it might appear that it again represented that of a majority. As Mr. Justice BUSHNELL wrote concerning a similar situation in *People* v. *DeMeerleer*, 313 Mich 548:

·· "The writer' of the present opinion expressed his views at length in a dissenting opinion in *People* v. *Crandell,* 270 Mich 124, 130. Having done so, he now considers himself bound by the Court's views of the matter as expressed in the opinion prepared by Mr. Justice WIEST."

Consequently, when it fell to this writer's lot to write the opinion for the Court in subsequent cases, such as *Nichols* v. *Central Crate & Box Co.,* 340 Mich 232, effect was given to the majority view, as announced in *Arnold,* this writer feeling bound, though not persuaded, thereby. (There was, of course, the additional factor in *Nichols,* not present in the instant case nor in *Arnold,* that the disability was due to the aggravation of a pre-existing disease, thus bringing it squarely within the meaning of *Hagopian* v. *City of Highland Park,* 313 Mich 608.)

The holding in *Arnold* that an accidental or fortuitous causal event was still prerequisite to compensation was followed by invitations to circumvent that holding by judicial redefinition of "accident." Typical is *Nichols,* in which it was urged that when plaintiff attempted to move a log with a cant hook and it failed to respond to pressure as he had expected, an unexpected event had occurred constituting an accident within the meaning of part 2 of the act. But it had long been held in this State that "lifting something heavy in the regular course of employment" or "exertion not shown to have been unusual to or greater in degree than ordinarily experienced in the general field of common labor" does not constitute a fortuitous event or accident. *Stombaugh* v. *Peerless Wire Fence Co.* (1917), 198 Mich 445; *Tackles* v. *Bryant & Detwiler Co.,* 200 Mich 350; *Sinkiewicz* v. *Lee & Cady,* 254 Mich 218; *Marlowe* v. *Huron Mountain Club,* 271 Mich 107; *Williams* v. *National Cash Register Co.,* 272 Mich 553; *Waites* v. *Briggs Manufacturing Co.,* 280 Mich 185; *Nagy*

v. *Continental Die Casting Corp.*, 283 Mich 162. *Arnold* was also followed by allurements, as in *Nichols* and in *Wieda* v. *American Box Board Co.*, 343 Mich 182, to judicial change of definition to be accomplished by holding that an accident had occurred, sufficient to warrant compensation under part 2 of the act, even though there had been no accidental or unexpected event causing the injury, if the result, the injury itself, had been unexpected. But as far back as 1916, in *Robbins* v. *Original Gas Engine Co.*, 191 Mich 122 (which had been followed consistently since), this Court had said (p 128):

"It is not sufficient that there be an unusual and unanticipated result; the means must be accidental— involuntary and unintended. There must, too, be some proximate connection between accidental means and the injurious result."

We are dealing with the construction of a statute. Since its original enactment in 1912 it has frequently and constantly received further legislative attention and amendment*—never, however, during the 31 years intervening between its adoption and the 1943 amendment, was there such amendment as indicated legislative dissatisfaction with judicial definition of the term "accident." Where a statutory provision is re-enacted without change in language, it must be presumed that the action was taken in the light of prior judicial construction placed upon it and with the intent to adopt such construction. *Van Antwerp* v. *State*, 334 Mich 593. When the Supreme Court has placed an interpretation on a statute over a considerable period of years it may indulge in the judicial assumption that the legisla-

---

* Since its enactment in 1912 the act was subjected to 196 amendments, adopted in 22 regular and 3 special sessions of the legislature. In only 3 of its regular sessions, those of 1923, 1925 and 1941, were no amendments adopted. Countless others were introduced through the years, which failed of passage.

ture has been content with that interpretation because of its failure to exercise its independent prerogative to restate the provision. *Twork* v. *Munising Paper Co.*, 275 Mich 174, 178.

"In *In re Clayton Estate*, 343 Mich 101, 107, this Court quoted with approval the principle enunciated in 21 CJS, Courts, § 214, pp 388, 390, as follows:

" ' "The doctrine of *stare decisis* applies with full force to decisions construing statutes or ordinances, especially where the construction has been long acquiesced in.    *    *    *

" ' "This rule is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed, *the power to change the law as interpreted being regarded, in such circumstances, as one to be exercised solely by the legislature.*" '    *    *    *

"To grant the relief requested by the plaintiff would require this Court to exercise legislative prerogatives." (Emphasis supplied.) *Consumers Power Company* v. *County of Muskegon*, 346 Mich 243, 251.

See, also, cases to same effect from other jurisdictions, cited in *In re Clayton Estate*, 343 Mich 101. Agreeable thereto, I was unwilling to avoid the holding of the Court in *Arnold,* even though not expressive of my own view, by the simple expedient of watering down our previous decisions, some of 40 years' standing and apparently long accepted by the legislature, as to what constitutes an accident.    To do that seemed to me tantamount to amendment of the statute by judicial fiat and invasion of the legislative province by the Court.

The situation is otherwise with respect to the construction placed by this Court, in *Arnold,* on the 1943 amendment.    It did not reflect the unanimous view of the Court, nor has it been followed by such lapse of time, general acceptance and establishment

as a part of the tissue of the law, or circumstances indicating legislative acceptance and approval as to inhibit recognition or, at least, a sounding out of the possibility of a changed majority view on this Court warranting reiteration of the view expressed in my opinion in *Croff*. Accordingly, for the reasons advanced at length by Mr. Justice BUSHNELL in *Hagopian* and *Anderson,* by Mr. Justice NORTH in *Anderson* and *Arnold,* and by me in *Croff,* I would affirm the award, with costs to plaintiff, on the ground that she has suffered a disability resulting from a personal injury which arose out of and in the course of her employment and which, therefore, should be held to be compensable under the 1943 amendment, even though not occasioned by accident or fortuitous event.

KELLY, J., concurred with DETHMERS, C. J.

KELLY, J. (*concurring*). *Beltinck* v. *Mt. Pleasant State Home and Training School,* 346 Mich 494 (September, 1956), presented only one question, namely: "Was the injury sustained by plaintiff an accidental injury compensable under part 2 of the workmen's compensation act?"

In writing to affirm the award of the commission (award affirmed by divided court) I defined the term *accident* as used in the compensation act, as follows:

1. The expression "accident" is used in the popular and ordinary sense as denoting an unlooked for mishap or an untoward event which is not expected or designed.

2. The word "accident" denotes something unexpectedly taking place not according to the usual course of things; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; something happening by chance; a mishap.

3. The statute contemplates that an accidental injury may result by mere mischance; that accidental injury may be due to carelessness, not wilful, to fatigue, and to the effect of voluntary action.

I reiterate in this opinion what I stated in the *Beltinck Case, supra,* and believe that the principles there set forth are re-established in the present appeal, as disclosed by the following quotations from opinions filed by 4 of my associates:

Justice BLACK: "The word 'accident,' as employed in the workmen's compensation act, means 'an unexpected result attending the operation or performance of a usual or necessary act or event.'"

Chief Justice DETHMERS: "I would affirm the award, with costs to plaintiff, on the ground that she has suffered a disability resulting from a personal injury which arose out of and in the course of her employment and which, therefore, should be held to be compensable under the 1943 amendment, even though not occasioned by accident or fortuitous event."

Justice EDWARDS: "There is no longer a requirement that 'an accident' or 'a fortuitous' event (this Court's previous definition of 'accident') be proven as a condition precedent for recovery of workmen's compensation for a single-event personal injury which arises out of and during the course of employment."

Justice SMITH: "If the result was unanticipated and unexpected the result was as 'accidental' in legal effect as in ordinary speech. * * * The act authorizes compensation for accidents suffered at work, and the word 'accident,' after the 1943 amendments, comprehending a personal injury due to a

single event, includes both the unexpected cause and the unexpected result."

Affirmed. Costs to appellee.

Voelker, J., took no part in the decision of this case.